[Civ. No. 7325. First Appellate District, Division Two.—August 8, 1930.]

ALBERT E. HILL, Administrator, etc., Appellant, v. JOHN BADELJY, Respondent.

Earl Warren, District Attorney, Stanley D. Smallwood, Deputy District Attorney, Myron Harris and T. G. Negrich for Appellant.

Eugene H. Cherry for Respondent.

PRESTON (H. L.), J., *pro tem.*—The plaintiff, Albert E. Hill, as administrator with the will annexed of the estate of Stivi Svicarevich, deceased, brought this action to recover from defendant John Badeljy the sum of $7,000, alleging that said money belonged to the estate of the above-named deceased.

The case was tried before the court without a jury and judgment was entered in favor of the defendant. From this judgment plaintiff prosecutes this appeal.

Stivi Svicarevich, the deceased, will be hereafter referred to as "Steve."

The facts are not in serious dispute and are briefly these: Steve immigrated to the United States from Jugo-Slavia some fifteen years before his death. Practically all this time was spent working in the gold mines of Amador County, California. He was a single man. In the latter part of June, 1927, he left Amador County and went to Oakland, California, preparatory to taking a trip to his native land. He stayed in Oakland thirty-five days, making his home with respondent John Badeljy, who was his second cousin. When he came to Oakland he had considerable stock of the Pacific Gas and Electric Company and also $3,377.01 in cash, which he had withdrawn from the Bank of Amador County. He deposited $3,000 in cash in the Central National Bank of Oakland, withholding for his personal use the sum of $377.01. On July 2, 1927, he delivered the Pacific Gas and Electric Company stock to the manager of the Slavonic department of the Bank of Italy in San Francisco, with instructions to sell the stock and deposit the money to his account in the savings department of the Bank of Italy. On July 6, 1927, the stock

was sold by the bank for $7,424.06, and the money deposited as directed. Thereafter, and on July 9, 1927, Steve and respondent called at the bank together and Steve withdrew $424.06, leaving $7,000 in the bank to his credit. Steve informed Mr. Pilcovich, the manager of the Slavonic department of the bank, that he was going to Europe and wanted to fix his account so his cousin, the respondent, could send him money as he needed it while he was away. Mr. Pilcovich advised Steve to leave the money in the bank in the trust department and when he wanted any money to correspond with the bank. In reply to this suggestion Steve stated in the presence of respondent and Mr. Pilcovich as follows: "I am an old man and I write very few letters. I will write to him (respondent) whenever I need a few dollars and he will send it to me." Thereupon Mr. Pilcovich advised Steve that a joint account was the only form the bank provided, and that if this was entered into the respondent could withdraw the money at any time, to which Steve replied, "that he (respondent) would not do anything like that." Mr. Pilcovich then handed Steve and respondent a form of agreement for the creation of a joint tenancy account with right of survivorship, which was signed by Steve and the respondent and which reads as follows:

"Joint Tenancy Agreement with the Bank of Italy, No. 23677. John Badely or Steve Svicarevich. Dated July 6, 1927. It is agreed that all deposit now or hereafter to be made to the credit of the above account in the Bank of Italy by us or any of us or by any one else, and all dividends or interest thereon without consideration of the previous ownership thereof, are and shall become our property as joint tenants and not as tenants in common and shall be payable to any of us during our lives or to the survivor or any of the survivors of us after the death of any of us, and payment to, and receipt and acquittance of any of us to whom such payment is made shall be a valid and sufficient release and discharge to said bank, and said bank is hereby directed to hold and pay out all or any part of the funds in said account in accordance with the above agreement.

"(Signed) JOHN BADELY
"(Signed) STIVI SVICAREVICH."

After this agreement was executed by Steve and respondent the $7,000 was placed in the joint account of

John Badely or Steve Svicarevich in conformity with said joint tenancy agreement. The respondent took no part whatever in the conversation with the manager of the bank, but remained silent during the entire conversation and transaction.

Thereafter, and on July 30, 1927, Steve left Oakland for Jugo-Slavia and died there on September 22, 1927, leaving a will by which he bequeathed all his estate to his sister-in-law, Katy Svicarevich, with whom he was stopping in Europe. Soon after the death of Steve a relative in the old country wrote to respondent informing him that Steve had died and that Steve had stated that he had $10,000 in banks in America and that respondent had the bank-books, etc. Soon after the receipt of this letter respondent consulted an attorney in Oakland and thereafter withdrew the $7,000 as follows: $5,000 on October 24, 1927; $1500 on October 25, 1927, and the remaining $500 on October 26, 1927.

The $3,000 remained in the Central National Bank to the credit of Steve, and no attempt was made by respondent to withdraw any part of this money and no claim is here made that said sum is in any way affected by the joint tenancy agreement or by this case.

Steve's will was admitted to probate in the Superior Court in and for the County of Alameda and appellant was appointed administrator with the will annexed. Appellant then demanded a return of the $7,000 from respondent, which was refused. Thereafter, appellant, as such administrator, brought this action to recover said $7,000, predicating the action upon fraud, undue influence, mistake and money had and received. Respondent answered by denying fraud, undue influence, mistake and money had and received, and as a special defense set up section 15a of the Bank Act. The court found that no fraud or undue influence was exercised by respondent or any other person over Steve in the making of the deposit, but further found as follows:

"That it is true that at the time of signing said joint tenancy agreement said decedent was about to go to Europe and that the sole purpose of said decedent in changing said account and entering into said joint tenancy agreement was to enable the defendant to withdraw funds therefrom for

the use and benefit of decedent while said decedent was in Europe; that it is true that said decedent did not intend to give said sum of $7,000.00 or any part thereof to the said defendant.''

''That nothing was said to or by decedent at the time of signing said joint tenancy agreement or at any other time respecting the form of the account or the right of survivorship, and that said account was made a joint tenancy account through the mutual mistake of decedent and the defendant and a mistake or oversight on the part of the employee of said bank; that decedent did not intend to make defendant a joint tenant in said bank account, nor to provide that upon his death the said account should become the property of defendant.''

''The Court, however, finds that the foregoing Findings of Fact with respect to mutual mistake in the making of said deposit are immaterial by virtue of the provisions of section 15a of the Bank Act, which said section provides in part as follows: The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such surivivor.''

Appellant contends that ''The provision of section 15a of the Bank Act making a joint tenancy agreement with right of survivorship conclusive evidence is unconstitutional in that it deprives one of his property without due process of law.'' We are unable to agree with this contention. The Fourteenth Amendment to the Constitution of the United States provides that no person shall be deprived of life, liberty or property without due process of law, and article I, section 13, of the Constitution of California contains the same provisions. The deprivation of such right, without due process of law, would be a violation of these provisions. ''The meaning of this is that no one can be deprived thereof without notice and an opportunity for a hearing before some tribunal authorized to determine the question.'' (*Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965, 966] ; see, also, *Angelopulos* v. *Bottorff,* 76 Cal. App. 621–625 [245 Pac. 447] ; *Abrams* v. *Daugherty,* 60 Cal. App.

297 [212 Pac. 942]; *Brecheen* v. *Riley*, 187 Cal. 121–124 [200 Pac. 1042].)

 Appellant claims that the legislature had no authority to provide that *the making of the deposit in the form stated should be conclusive evidence in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.* It is clear from the language of the act itself (sec. 15a of Bank Act) that the legislature intended that the making of the deposit in the form stated *was only conclusive evidence as to accounts opened by or with the consent of the owner or owners of the money,* and did not intend to include accounts otherwise opened; for it expressly excludes accounts in connection with which there has been fraud or undue influence. The provisions of the act, we think, refer exclusively to an action where *one of the parties named in the account is dead.* During the lifetime of both of the depositors either one would have the right to establish the real fact, whatever it might be, with reference to the account, and would have the right to bring an action in respect thereto. He thus has an opportunity for his day in court and through him his personal representatives would have their day. Therefore, in the case at bar, Steve had from July 9 to September 22, 1927, within which to bring an action against the respondent or the bank, or both, if any mistake had been made in opening the joint account.

The state of New York has exactly the same statute as the one here in question and the Supreme Court of that state, in upholding the constitutionality of their statute, said in *Heiner* v. *Greenwich Sav. Bank,* 118 Misc. Rep. 326 [193 N. Y. Supp. 291–293]: "The legislature has the power to limit remedies. Under this statute it may be said that the remedy for a claim that the account is not what it purports to be must be pursued during the lifetime of one of the depositors. It may be construed to be of the nature of a statute of limitation. As shown above, this would not be a taking of property without due process of law, because during his lifetime the decedent could have sued with reference to the account."

We are in full accord with the construction given the act by the New York Supreme Court, and think the above case fully answers all the contentions made by appellant.

"The power of the legislature to change rules of evidence as they exist at common law, and to limit, change and vary existing rules for the limitation of actions, has been the subject of frequent consideration in the courts, and has been uniformly held not to be affected or restricted by the constitutional provisions prohibiting the taking of life, liberty or property without due process of law." (*People* v. *Turner*, 117 N. Y. 227 [15 Am. St. Rep. 498, 22 N. E. 1022].)

We think said section 15a of the Bank Act is analogous to such statutes as section 3787 of the Political Code, which makes a tax deed from the state *conclusive* evidence that after a sale to the state the tax collector stamped all subsequent bills "Sold for Taxes" and the date of the sale. It has been repeatedly held that such a statute was within the power of the legislature to enact and that it did not deprive a person of his property without due process of law. (See *Bank of Lemoore* v. *Fulgham*, 151 Cal. 234 [90 Pac. 936]; *Ramish* v. *Hartwell*, 126 Cal. 443 [58 Pac. 920]; *Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81].)

It will be noted that the provisions of section 15a of the Bank Act do not require any formal written agreement between the depositors establishing a joint tenancy account, but in this case a clear and unambiguous writing was entered into between the depositors. In such case the rule is well settled that when a written instrument is executed by two parties on opening an account with a bank, agreeing that the deposit when made, and all accumulations thereof, shall be held by them as joint tenants with the right of survivorship, each is seised of the whole estate from the creation of the tenancy and the whole vests in the survivor without regard to the prior ownership or title to the property. (*Estate of Gurnsey*, 117 Cal. 211–215 [170 Pac. 402]; *Kennedy* v. *McMurray*, 169 Cal. 287–291 [Ann. Cas. 1916D, 515, 146 Pac. 647]; *Estate of Harris*, 169 Cal. 726 [147 Pac. 967]; *Conneally* v. *San Francisco S. & L. Soc.*, 70 Cal. App. 180–183 [232 Pac. 755].)

The question involved in cases of this character is the intention of the parties making the deposit and where such intention is evidenced by a written agreement, as was

done in the case at bar, this question of intention ceases to be an issue and the courts are bound by the written agreement. (*Kennedy* v. *McMurray, supra; Conneally* v. *San Francisco S. & L. Soc., supra.*)

■ Furthermore, in any action between the depositors or the bank during the *lifetime of both depositors,* in the absence of fraud or mistake, parol evidence is not admissible to change the terms or the legal effect of such a written instrument where it is in no respect uncertain or ambiguous (*Conneally* v. *San Francisco S. & L. Soc., supra; Estate of Gurnsey, supra; DeRocha* v. *Corse,* 94 Cal. App. 340 [271 Pac. 208]; *Nimmo* v. *Fitzgerald,* 202 Cal. 565 [261 Pac. 1015]), but after one of the depositors has died, neither the surviving depositor nor the bank will be permitted under section 15a of the Bank Act to show that the account was created by mistake of one of the depositors.

■ Appellant next contends that the court should have found that respondent was guilty of fraud in procuring from Steve the joint account with the right of survivorship. The question of fraud was a question of fact to be determined by the trial court, and in this case the trial court found there was no fraud, and the evidence is amply sufficient to support such a finding. Therefore, we are not permitted to interfere with such a finding of the trial court. There was not, in our opinion, any evidence of fraud.

It follows from what has been said that we are of the opinion that the judgment of the trial court must be affirmed, and it is so ordered.

Nourse, P. J., and Sturtevant, J., concurred.