[Civ. No. 7872. First Appellate District, Division One.—September 26, 1932.]

MARY HURLEY, as Special Administratrix, etc., Appellant, v. HIBERNIA SAVINGS AND LOAN SOCIETY (a Corporation) et al., Respondents.

Thomas R. McGrath and Joseph A. Brown for Appellant.

Hugh K. McKevitt and Jack Howard for Respondents.

LANDIS, J., *pro tem.*—This is an action to determine the ownership of a deposit of money with the defendant Hibernia Savings and Loan Society, and to declare a constructive trust in said money. Briefly stated, the complaint recites that Patrick Hurley died intestate on the twenty-ninth day of October, 1929; that plaintiff, Mary Hurley, was on October 30, 1929, appointed special administratrix; that plaintiff and Patrick J. Hurley were married May 26, 1918, at San Francisco; that on September 18, 1918, Patrick J. Hurley opened an account with the defendant bank with the community earnings and accumulations; that in case of death or need the same should be transferred or withdrawn in her favor; that having confidence in the promise of said Patrick J. Hurley, she permitted him to deposit the community earnings and savings in said bank; that notwithstanding said promise, said Patrick J. Hurley, in bad faith, opened said account in his name and in the name of defendant Daniel Hurley, payable to either or the survivor of them; that the amount involved is $1697; and that the defendant Daniel Hurley has no right or interest in said moneys; that the amount on deposit at the time of the death of the deceased was $1350.

The defendant Hibernia Savings and Loan Society answered, in effect taking the position of a mere stake-holder in the matter, and defendant Daniel Hurley, sometimes also known as Daniel F. Hurley, answered denying the allegations concerning the circumstances involved, and by cross-complaint claimed title to the money in question and sought a judgment quieting his title thereto.

Judgment went for defendant Daniel Hurley under his cross-complaint quieting his title to the money in question, and plaintiff prosecutes this appeal.

There are some general allegations of fraud and undue influence set forth in the complaint, but at the trial appellant appears to have conceded that, at least in so far as respondent Daniel F. Hurley is concerned, no proof was made justifying such charge. In any event, such allegations derive no direct support from the evidence.

It is conceded by both appellant and respondent that there are but two questions involved: (1) Whether or not the money is separate property or community property; and

(2) whether or not the deposit as worded constitutes a joint tenancy.

The evidence shows that Patrick Hurley died intestate October 29, 1929; Mary Hurley was on October 30, 1929, appointed special administratrix; appellant Mary Hurley and decedent were married May 26, 1918. This was a second marriage of both parties, the respondent Daniel Hurley being a son of decedent by a former marriage. The bank account which is the subject of the action was opened at the said Hibernia Bank on September 11, 1918; the first deposit of $700 was made by decedent in the company of his son, the respondent Daniel Hurley. This sum of $700 was withdrawn from an existing account in the Humboldt Bank, the funds of which were owned and deposited there by decedent on February 18, 1918, and prior to decedent's marriage with appellant. The present balance of the account, aggregating the sum of $1213.96, which is the subject of controversy, is made up of the original deposit of $700, interest credits, and additional deposits made by decedent from time to time in amounts varying from $11 to $75, and from which is deducted withdrawals made by decedent from time to time in the amounts varying from $5 to $300.

The interest items aggregate the sum of $567.96; the deposits other than the original $700 deposit aggregate the sum of $951, and the aggregate amount of the withdrawals, $1,005.

The bank pass-book shows the account was opened and carried in the name of Patrick Hurley or Daniel Hurley, a minor aged fourteen years eight months, and payable to either or to the survivor of them.

Daniel F. Hurley testified that at the time the account was opened he was going away to school, and the morning before he was to leave, his father took him to the Humboldt Bank and withdrew an account in the name of Patrick J. Hurley and took him to the Hibernia Bank and placed it in the name of Patrick Hurley or Daniel F. Hurley; that it was decedent's understanding that if anything happened to him, that money would help respondent up through school, or any time he needed it, it would be there for him.

The book record shows that on August 29, 1923, the balance in the account which then amounted to $1697.78 was withdrawn by decedent and redeposited by decedent on August 31, 1923. Daniel F. Hurley testified that he knew about said transaction and explained it as follows: He, referring to decedent, was at that time at the home of my uncle; he boarded there in the month of August, 1923; he had family difficulties at home; he was under the impression that his wife would go down to the bank and put an attachment against the money; the check was withdrawn and brought to the home of my uncle; he left it with him and his wife and it was redeposited in the Hibernia Bank.

The evidence shows that all deposits and all withdrawals were made by decedent. None was made by either Daniel F. Hurley or Mary Hurley.

That the original deposit of $700 and the accrued interest thereon were separate funds of decedent was very clearly established. With respect to the additional deposits, appellant relies upon, first, the legal presumption that property in the possession of either the husband or the wife at the time of his or her death is presumed to be community property; and secondly, contends that such presumption is supported by her testimony, which in effect shows that during the time the additional deposits were made decedent was working, earning money, and was not accounting to her for all his earnings. That is the most that can be said in connection with the evidence relied upon to support the presumption. There is not a word of testimony showing that such earnings or any part thereof found their way into the account in question.

In support and justification of the inference or deduction made by the trial court that it was decedent's separate property, it was shown that decedent was a laboring man and that his earnings contributed not only to his own maintenance, but also to the support of appellant and children of appellant by a former marriage; that during the period of time the additional deposits were made decedent was receiving rentals from flats, conceded to be separate property, and in which flats respondent Daniel Hurley owned an undivided interest through inheritance from his mother, and it was testified by Daniel Hurley that the rental money was collected by decedent and deposited in the ac-

count at the Hibernia Bank in the name of his father and himself.

The evidence also shows that the aggregate amount of the withdrawals made from the account by decedent exceeds the total amount of the additional deposits, and also shows that while decedent was very sick and immediately before his death, an attempt was made to have him sign a writing said to be a release of the money in the bank. This he refused to sign.

The question, then, is whether, upon the evidence hereinbefore set forth, a finding by the court that the property in question was the separate property of decedent could be held to be supported by the evidence.

In the case of *Freese* v. *Hibernia Sav. etc. Soc.*, 139 Cal. 392 [73 Pac. 172, 173], the court says: "While the presumption attending the possession of property by either husband or wife is that it is community property, such presumption is a disputable one, and may be controverted by other evidence. Respondents contend that the evidence of plaintiff was not legally sufficient to overcome this presumption. They rely upon expressions of this court in various cases to the effect that the fact that property is separate property of one of the spouses must be affirmatively established 'by clear and decisive proof', 'by clear and satisfactory evidence', and 'by clear and convincing evidence'. . . . Ballinger, in his work on Community Property, says (sec. 167) : 'It is not believed, however, that these terms should be considered as going to the length that their general meaning might import. Certainly it is not required that the proof to destroy this presumption should be any more than sufficient to satisfy the mind of court or jury that its weight is enough to cause a reasonable person, under all the circumstances, to believe in its sufficiency, in order to counterbalance the naked presumption that the property was acquired with the funds of the community. The property is merely considered as the property of the community until the contrary is shown by legal proof, and legal proof would seem to be a preponderance of the testimony under all the facts and circumstances of the particular case.' (See, also, 6 Am. & Eng. Ency. of Law, 2d ed., p. 327.)

"Clearly, it was never intended by this court to lay down a rule requiring demonstration in such matters,—that

is, such a degree of proof as excluding possibility of error, produces absolute certainty. (Code Civ. Proc., sec. 1826.) Such proof is never required. . . . We are of the opinion that it is incumbent on the party seeking to overcome the presumption of community property to do no more than to produce such legal evidence as, *under all the circumstances of the particular case,* would ordinarily produce conviction in an unprejudiced mind, and that in the face of such evidence, the naked presumption, unsupported by any testimony, must fall. In considering whether or not such a degree of proof has been attained, we have the right to consider such presumptions and inferences as are authorized by the law of evidence. That a presumption declared by law has its place in such a dispute was acknowledged by this court in *Denigan* v. *San Francisco Savings Union,* 127 Cal. 142 (147) [59 Pac. 390, 78 Am. St. Rep. 35]. An inference is simply a deduction which the reason of the judge or jury makes from the facts proved, and in considering a question of the character here involved, we have the same right to make such reasonable deduction from the facts proved as we have in considering other questions.''

There was not a single circumstance shown by the evidence in aid of the presumption of community property, unless it be the circumstance that decedent having had possession of the money he received for his labor he could or might have deposited some of it in the bank. Not a word of evidence that he did, and the apparent inference of the trial court that he did not, is a reasonable deduction from the facts proved.

As before stated, the $700 and interest accrued thereon was very clearly established as separate property, and there is undisputed evidence that the rental money was separate property and was deposited in the account in question. Measured by the foregoing rules, we are unable to hold that the evidence given on the trial was not legally sufficient to support a finding that the property was separate property.

■ With respect to the question of whether or not the deposit as worded constitutes a joint tenancy, the evidence shows that the account was opened and made in the name of Patrick Hurley, or respondent Daniel Hurley, payable to either or to the survivor of them. The written evidence consists of the following: (1) On the bank-book No. 520493

is written, both on the outside cover and on the inside immediately preceding the entries of the deposits, withdrawals and balance, the following: "Patrick Hurley or Daniel Hurley a minor aged 14 yrs. 8 mos. Payable to either or to the survivor of them. In account with The Hibernia Savings and Loan Society"; and (2) on a card retained by the bank, signed by each, Patrick Hurley and Daniel Hurley, there is written above the said signatures of the depositors, the following: "Patrick Hurley or Daniel Hurley A minor, aged 14 yrs. 8 mos. Payable to either or to the survivor of them. I hereby agree to the by-laws and rules of The Hibernia Savings and Loan Society as to all deposits and withdrawals made on this account," and below the signatures is shown identification information such as the residence, birthplace, mother's maiden name, etc. We are not aware of any code provision or principle of law which would prevent decedent by this transfer of deposits from his sole account to a joint account from giving his son a joint interest or making him the joint owner with him in the latter deposit. Whether he intended to do so or not is the essential element to be considered, and if that clearly appears from the instruments executed by him and his son when he made the deposits in their names, we cannot look beyond those instruments. If it is clear on the question of intent the right of the parties must be determined solely from its consideration. No parol evidence could affect it.

Appellant urges the contention that there was no written agreement; in other words, that the above-mentioned written evidence does not constitute the written agreement required. Considering the above writings, although the bank-book is not signed by the depositors and while the card which is signed by them may be but a mutual declaration of the father and the son as to the deposits, the particular question is, Do they clearly disclose an intention on the part of the father when the deposit was made by him to the account of himself and his son, to constitute it and further deposits the joint property of himself and his son? We do not perceive how any other reasonable construction can be given to the instruments than that he did. The written declaration as applying to him says so in express terms. The moneys were his before the deposit account was opened. He declares that as deposited by him it is not his separate

property but the joint property of himself and his son. There is no ambiguity or uncertainty about this language. It was undoubtedly intended to and did create a joint interest or ownership in the deposit, and this being the intention, and as the right of survivorship applies to joint interests or ownerships of personal property, it must have been the intention of the deceased Hurley in declaring the deposit to be joint property to have intended that the incident which follows joint ownership should apply to it, and that upon his death his son should take the deposit as survivor. It was unnecessary to accompany the creation of the joint ownership with a declaration respecting survivorship. That follows as a legal incident to the creation of the joint interest and a matter which decedent must be held to have known and intended to effect by the clear creation of the joint interest.

The foregoing principles of law are abundantly supported by the following authorities: Section 16 of the Bank Act, as said section stood prior to its repeal in 1919, an excerpt from which reads as follows: "When a deposit with a bank shall be made by any person in the names of such depositor and another person or persons, and in form to be paid to either or the survivor or survivors of them, such deposit thereupon and any additions thereto made by either of such persons upon the making thereof, shall become the property of such person as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named," etc.; section 683 of the Civil Code; and the following cases: *Estate of Gurnsey,* 177 Cal. 211 [170 Pac. 402]; *Kennedy* v. *McMurray,* 169 Cal. 287 [146 Pac. 647, Ann. Cas. 1916D, 515]; *Estate of Harris,* 169 Cal. 725 [147 Pac. 967]; *Crowley* v. *Savings Union Bank etc. Co.,* 30 Cal. App. 144 [157 Pac. 516]; *Crowley* v. *Savings Union Bank etc. Co.,* 30 Cal. App. 535 [159 Pac. 194]; *McCarthy* v. *Holland,* 30 Cal. App. 495 [158 Pac. 1045]; and see, also, the cases of *Reilly* v. *Filben,* 107 Cal. App. 722 [291 Pac. 454]; *Hill* v. *Badeljy,* 107 Cal. App. 598 [290 Pac. 637]; *Waters* v. *Nevis,* 31 Cal. App. 511 [160 Pac. 1081]; *Halsted* v. *Central Bank,* 36 Cal. App. 500 [172 Pac. 613]. The general character of a joint tenancy account is set forth in the matter of the *Estate of Gurnsey, supra,* wherein it is held that in such a bank

deposit the title does not pass to and vest in the survivor on the death of the cotenant, but rather each tenant is seised of the whole estate from the time of the creation of the account. No change occurs in title on the death of the cotenant, the survivor merely becoming the sole owner of the account of which he was already seised.

In 7 California Jurisprudence, at page 335, we find the following: "Perhaps the most common joint tenancy is that which is created in bank deposits", citing a long list of cases holding that a joint deposit constitutes a joint tenancy.

The cases cited by appellant, among which the case of *Denigan* v. *Hibernia etc. Society*, 127 Cal. 137 [59 Pac. 389], is the leading case of the line of decisions relied upon, and which case is expressly referred to in the case of *Conneally* v. *San Francisco S. & L. Soc.*, 70 Cal. App. 180 [232 Pac. 755], and *Kennedy* v. *McMurray, supra*, did not involve deposits with a right of survivorship expressed.

Finally, if it should be held that the written evidence does not measure up to the requirements necessary to constitute a written agreement and it could be said that no written agreement was executed between the parties to the deposit and accompanying its making, presenting the question as to the intention of the depositor in making the deposit in the form he did, whether he intended to make a gift, or create a joint interest in the deposit with right of survivorship, or to establish a trust as to any balance on deposit at his death, we must apply the rule that in the absence of any written instrument clearly disclosing his intention in those respects, such intention was open to inquiry and was to be determined from all the facts and circumstances connected with the deposit. The whole matter would rest in parol and it would be for the court to determine the intention from all the facts and circumstances proved in the case.

In this case, without again reciting the facts, suffice it to say it clearly appears that the facts and circumstances shown by the evidence were ample to support the conclusion of the trial court that the intention of decedent was to create a joint tenancy.

The judgment appealed from is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.