[Civ. No. 4671. Third Appellate District.—February 1, 1933.]

In the Matter of the Estate of SARAH EDNA FINGLAND, Deceased. HOWARD I. SMYTH, Administrator, etc., et al., Respondents, v. JAMES C. FINGLAND et al., Appellants.

J. J. Henderson and W. A. Green for Appellants.

G. P. Hurst and Marshall Z. Lowell for Respondents.

PARKER, J. *pro tem.*—This is an appeal from an order and decree of distribution. The controversy is between the heirs of Sarah Edna Fingland, deceased, and the heirs of John Fingland, her predeceased spouse. The dispute involves the character of the property owned or held by Sarah Edna Fingland at the time of her death.

John Fingland and Sarah were married in 1901 and lived together until the death of John on or about April 9, 1923. There were no children. The heirs of the wife, to whom the decree appealed from awards her estate, are her brothers, sisters and the son of a deceased sister. The heirs of the husband, claiming a one-half of the estate are his brothers and a sister. It is admitted by all parties that the entire estate was originally the community property of John and Sarah Fingland, the fact being that the accumulated assets represented the earnings of the husband.

These earnings were placed in a savings bank at Woodland, where the parties resided for a number of years.

From the record before us the first definite evidence with this bank account appears as of the year 1912. On March 21, 1912, we find evidence of the deposit and on the ledger sheet of the bank we find the notation: "This deposit and the increase thereof is payable to the undersigned or either of them, or to the survivor in case of the death of either of them." There is nothing on the ledger sheet to indicate at whose request or suggestion the notation was made. There is, however, an undated signature card containing the same notation and signed by both of the spouses. While the card is undated there is evidence to support the conclusion that the same was executed at a date prior to the year 1915 and that subsequent to that time the account was carried as on the card indicated.

As much of the controversy seems to hinge upon this mode of account we may stop here and answer the respective contentions of the parties to the litigation.

Respondents, heirs of the wife, argue that the mode of deposit as evidenced by the card and the agreement of the spouses, created as between the husband and wife, a joint tenancy in the moneys then on deposit and the accruals thereto; that upon the death of John Fingland the wife took the money as the survivor of the joint tenancy with no reference to nor connection with the marital community.

The authorities support this contention. The effect of the agreement was to create a joint estate in the property to which it relates. The title to the money deposited passed out of the community at the time of the deposit and it then became the joint property of the husband and wife, invested with all the attributes of such property whether the wife understood its exact nature when she signed the agreement and accepted its benefits or not. (*Estate of Gurnsey,* 177 Cal. 211 [170 Pac. 402]; *McDougald* v. *Boyd,* 172 Cal. 753 [159 Pac. 168]; *Hill* v. *Badeljy,* 107 Cal. App. 598 [290 Pac. 637]; *Kennedy* v. *McMurray,* 169 Cal. 287 [146 Pac. 647, Ann. Cas. 1916D, 515].)

We therefore hold that upon the death of the husband the wife succeeded to the moneys deposited not by virtue of any community interest but as the survivor of the joint tenancy. As was said in *McDougald* v. *Boyd, supra,* "she took by virtue of her estate originating at the time of the creation of the joint tenancy".

■ At a time prior to the decease of the husband a sum of money was withdrawn from the deposit and invested in certain bank stocks. The certificates were issued to the husband and wife by name, as joint tenants, and so remained until about nine days before the death of the husband, when the certificates in joint tenancy were canceled and the stock reissued to the wife alone. It seems clear from the authorities cited that had there been no transfer out of the joint tenancy and the stock had remained as issued, the wife, upon the death of the husband, would have been entitled thereto as the surviving joint tenant. (*Hurlbert* v. *Title Ins. & Trust Co.*, 181 Cal. 692 [186 Pac. 142].) The transfer then from the joint tenancy to the wife was either effectual or noneffectual. If effectual it vested the wife with a complete title as her separate property; if noneffectual it left undisturbed the previous estate upon the termination of which the wife, as survivor, would take. In either case the trial court's finding that upon the death of the husband the stocks were the separate property of the wife must be upheld.

In passing we note that no claim of fraud arises in the case.

■ There remains to be considered the real estate. The trial court's finding is that the husband conveyed the property to his wife "by deed duly executed, certified and delivered to Edna Fingland and placed on record prior to the death of the husband". This finding is not seriously questioned and at the oral argument appellants did not press the claim that the realty belonged to the community at the time of the husband's death.

The judgment is affirmed.

Plummer, Acting P. J., and Thompson (R. L.), J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1933.