### TOOLEY v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 9743.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1941.

---

Byron Coleman, of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Warner W. Gardner, and O. W. Hammonds, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Homer H. Tooley, as executor of the will of Carrie M. Botts, who had been the widow of J. M. Botts, seeks review of a decision of the United States Board of Tax Appeals holding that her estate is the transferee, under section 311 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 311, of certain assets of the estate of J. M. Botts, and liable as such transferee for the federal tax of Mr. Botts' income for the calendar year 1933. No question is raised concerning the amount of the tax, the sole question being whether Mrs. Botts and her estate are transferees within the provisions of section 311.

The Commissioner's letter to Tooley, as such executor, determined that the estate of J. M. Botts transferred to Carrie M. Botts certain property of that estate; that J. M. Botts' estate owed a federal tax of $16,507 and interest on his income for the calendar year 1933; that it was without assets to pay the tax; that Carrie M. Botts had since died and that the Commissioner, invoking section 311, proposed to assess against her estate, as such transferee of the assets from the estate of J. M. Botts, a liability in the amount of the latter's income tax. Tooley filed his petition with the Board of Tax Appeals protesting the determination of this transfer from the estate of Botts.

The "assets" referred to as received by Carrie M. Botts from the J. M. Botts estate consisted of 1,358.5 shares of the American Marine Paint Company, a corporation, of a value in excess of the amount of the tax. A part of the shares of the corporation had been owned by each of the spouses. They contemplated creating a joint tenancy in them and they were issued to James M. and Carrie M. Botts as joint tenants with the right of survivorship. Nevertheless the California superior court purported to

distribute the 1,358.5 shares to Carrie M. Botts in its decree of distribution of Mr. Botts' estate. The Board decided that she acquired them as transferee of the J. M. Botts estate because the decree of distribution finally determined the title so to have passed. Tooley's petition here for review followed.

Tooley contends that the transferee was barred by the limitation of the statute creating the transferee liability. Section 311(b) of that Act provides:

"(b) *Period of limitation.* The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer; * * *."

The burden of proof is on Tooley to show that the assessment against Mrs. Botts' estate was made after the expiration of the statutory period. The "period of limitation" referred to in section 311 [1] includes the time in which there is pending a proceeding before the Board of Tax Appeals to determine the original liability for the income tax, here the liability of Mr. Botts. If this period of time for such proceeding in that case be eliminated from the computation of time within which the transferee's tax may be assessed, the assessment on Mrs. Botts' estate is barred. Otherwise it was within the statutory period.

Tooley contends that this period must be eliminated from that computation because the proceeding before the Board, conducted by one Dollar, executor of Mr. Botts' will, was initiated by him after he had ceased under the California law to be the executor. The record shows that Dollar, as such executor, had notified the Commissioner of his executive capacity. Indeed, he had signed as such executor and given to the Commissioner an extension of time within which the assessment for Mr. Botts' income tax could be made.

Section 312 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 312, provides:

"§ 312. *Notice of fiduciary relationship*

"(a) *Fiduciary of taxpayer.* Upon notice to the Commissioner that any person is acting in a fiduciary capacity such fiduciary shall assume the powers, rights, duties, and privileges of the taxpayer in respect of a tax imposed by this title [chapter] (except as otherwise specifically provided and except that the tax shall be collected from the estate of the taxpayer), until notice is given that the fiduciary capacity has terminated.

"(b) *Fiduciary of transferee.* Upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 311, the fiduciary shall assume, on behalf of such person, the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person) until notice is given that the fiduciary capacity has terminated."

The regulation of the Commissioner, Article 1241, 1932 Regulations, provides "The 'notice to the Commissioner' provided for in section 312 shall be a "written notice signed by the fiduciary and filed with the Commissioner."

This case comes to us upon the petition and answer in Tooley's proceeding contesting the transferee liability and the findings and decision of the Board of Tax Appeals. We do not have the evidence before us. The findings of the Board do not disclose that there was given any notice "signed by" Dollar addressed to "the Commissioner" "that the [Dollar's] fiduciary capacity has terminated." Dollar's fiduciary capacity and power to conduct the proceeding before the Board therefore continued during that proceeding. The fact that he recited in his petition before the Board that he was no longer executor of Mr. Botts' will was not the notice to the Commissioner required by the statute and

---

[1] "§ 277. Suspension of running of statute. The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter." 26 U.S.C.A.Int.Rev.Code, 277, Revenue Act of 1932, c. 209, 47 Stat. 169.

354

the regulation. Sanborn v. Helvering, 8 Cir., 108 F.2d 311, 313.

■ The Board properly found that the Commissioner's letter to Tooley determining a transferee liability was sent within the limited time, and hence it could consider the merits of the transferee controversy.

Several contentions are argued by the Commissioner as sustaining the contention that Mrs. Botts was the transferee of the assets of Botts. One (A) is based upon the assumption that such a joint tenancy had been created. In that event, the Commissioner claims, Botts at his death *transferred* his interest in the joint tenancy to his surviving co-tenant and hence Mrs. Botts is a transferee within the provisions of section 311. Another of the Commissioner's contentions is (B) that whether or not she held such a joint tenancy, at Mr. Botts' death the title must be deemed to have been tranferred to her by the decree of distribution of his estate. Another (C) that assuming in California the decree of distribution transfers only such title as was in the decedent, nevertheless the Board has not found the creation of a joint tenancy in Mr. and Mrs. Botts.

■ A. *In California the survivor of a joint tenancy holds the full estate by virtue of the original grant of the joint tenancy and not as a transferee from the deceased co-tenant.*

■ The evidence shows the shares were issued by the corporation to Mr. and Mrs. Botts as joint tenants with right of survivorship in July 1933. It is not suggested that this issue of stock in July, 1933, was with an intent to evade the tax, or that J. M. Botts was not then possessed of other assets to meet any future tax, or even that any income had been received by him in 1933 prior to the issue of the stock. The Commissioner's claim is that, in such a joint tenancy with the right of survivorship, on the death of a *joint tenant* he then *transfers* to his co-tenant his interest in the estate formerly held by both. As the Commissioner contends with reference to other questions hereafter considered, this question is to be determined by the California law. In that state the surviving co-tenant's estate does not vest by *transfer* from his co-tenant at the latter's death. It vests when the joint tenancy is created.

The question has arisen in California in several classes of cases. Probably the most significant with reference to the Commis-

sioner's contention is In re Estate of Gurnsey, 177 Cal. 211, 170 P. 402, 404. There was involved a tax upon property transferred "intended to take effect in possession or enjoyment * * * after the death." The supreme court, holding that a transfer creating a joint tenancy was not a transfer subject to the tax, states: "* * * In Hannon v. Southern Pac. R. Co., 12 Cal.App. [350] 355, 107 P. 335, the subject was treated at greater length. It was there shown that at common law the title to the joint property did not pass to and 'vest in the survivor' upon the death of his cotenant, but that 'each tenant was seised of the whole estate from the first, and no change occurred in his title on the death of his cotenant'; that 'it simply "remained" to him,' and came to him 'wholly from the original grant,' so that after the death of one, the other, in pleading his title, could allege a conveyance by the original grantor to himself, without mention of the co-tenant, citing Coke on Littleton, § 286, and 1 Washburn on Real Property, [page] 646, and concluding with the following: 'It is therefore a mistake to say of joint tenants that the title vests in the survivor upon the death of the cotenant, or that it descends to him from his cotenant; for it had already vested in him by, and at the time of, the original grant.' This is the legal effect of a joint tenancy at common law and under our Code, and it would, of course, prevail without regard to the actual intent of the donor who created it. The inheritance tax law, prior to 1915, imposed such tax upon transfers by gift, 'intended to take effect in possession or enjoyment,' by the donee, only at or after the death of the donor. A transfer to joint tenants, without other conditions, does not come within that description, for, as above shown, it gives to the donee immediately the title and the right of possession and enjoyment of the whole, and he succeeds to no new title or right upon the death of his cotenant, but is merely relieved thereby from the further interference of the cotenant. * * *"
In re Estate of Gurnsey, supra, 177 Cal. pages 215, 216, 170 P. page 404.

Thereafter the legislation specifically made taxable against the deceased joint tenant that part of the property so held at the time of death which did not originally, or at any time, belong to the survivor joint tenant. The Act of 1917, Ch. 589, provided that: "* * * the right of the surviving joint tenant or joint tenants, person or persons to the immediate ownership or pos-

session and enjoyment of such property *shall be deemed* a transfer *taxable under the provisions* of this act *in the same manner as though* the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed to the surviving joint tenant or joint tenants, person or persons, by such deceased joint tenant or joint depositor by will, \* \* \*." (Emphasis supplied.) Calif.Stats.1917, Ch. 589, Sec. 2(5).

On its face this 1917 Act (and its succeeding amendments and substitutes now imposing such a tax[2]) was confined to inheritance taxation by the words "shall be *deemed a transfer* taxable under the provisions of this act *in the same manner as though*," etc. The California courts since this taxing statute have held consistently that the original character of the joint tenancy as stated in Re Estate of Gurnsey, supra, is not changed and that on the death of a joint tenant the survivor has nothing then transferred to him from the decedent.[3]

In Re Estate of Fingland, 1933, 129 Cal. App. 395, 397, 18 P.2d 747, 748, a question arose as to whether funds accumulated from the husband's earnings, which were held by husband and wife as joint tenants, came to the surviving wife as community property or as her separate property. The court held, relying upon the Estate of Gurnsey, supra, and other cases therein cited, as follows: "We therefore hold that upon the death of the husband the wife succeeded to the moneys deposited not by virtue of any community interest but as the survivor of the joint tenancy. As was said in McDougald v. Boyd, supra [172 Cal. 753, 159 P. 168], 'she took by virtue of her estate originating at the time of creation of the joint tenancy.'"

The Fingland case also cites Hurlbert v. Title Insurance & Trust Company, 181 Cal. 692, 695, 186 P. 142, 143, where the supreme court held concerning the character of the tenancy of the surviving joint tenant-plaintiff that "the legal title did not even vest in plaintiff on the death of his joint tenant. His title existed from the beginning."

In Hill v. Badeljy, 1930, 107 Cal.App. 598, 605, 290 P. 637, the administrator of the estate of a deceased joint tenant sued the surviving joint tenant, alleging that a certain sum of money held by the joint tenancy belonged to the deceased's estate. Relying on In re Estate of Gurnsey, supra, and the cases it cites, the court held that the administrator's claim could not be sustained since nothing of the joint tenancy ever became a part of the decedent joint tenant's estate.

In Hurley v. Hibernia Savings Society, 126 Cal.App. 314, 322, 14 P.2d 574, 577, Mary Hurley, as special administratrix of the estate of her husband Patrick Hurley, sued Daniel Hurley and Hibernia Savings Society to quiet title in the estate to a savings account held in joint tenancy by the deceased Patrick with his son, Daniel. Daniel answered and cross-complained claiming title to the money in question. The court, again relying on In re Estate of Gurnsey, supra, and numerous cases of the California supreme court and district courts of appeal, held "the general character of a joint tenancy account is set forth in the matter of the Estate of Gurnsey, supra, wherein it is held that in such a bank deposit the title does not pass to and vest in the survivor on the death of the cotenant, but rather each tenant is seized of the whole estate from the time of the creation of the account. No change occurs in title on the death of the cotenant, the survivor merely becoming the sole owner of the account of which he was already seized."

In Siberell v. Siberell, 1932, 214 Cal. 767, 773, 7 P.2d 1003, 1005, a divorce proceeding where the question was whether or not the joint tenancy was in reality community property, the court, in deciding there was a joint tenancy, described the latter as an estate in which the creditors of the deceased joint tenant could obtain no interest, saying: "\* \* \* It would be manifestly inequitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character, and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into op-

---

[2] Now in Act 8495, section 2(5), General Laws of California.

[3] It is apparent from these succeeding decisions of the California courts that it could not be claimed that the special act so taxing joint tenancies, treating them "as though" constituting transfers of title for purposes of the California inheritance tax act, also so treated them for the purpose of a future transfer provision of a federal income tax act.

eration the law of descent, administration, rights of creditors, and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. * * *"

Succeeding these cases, in 1934, the district court of appeal held that a joint bank account of decedent and the executor constituted no part of the assets of the decedent's estate and hence the executor was entitled to no commission or fees thereon. In re Fritz' Estate, 140 Cal.App. 487, 35 P. 2d 643.

In the recent case of Dando v. Dando, 1940, 37 Cal.App.2d 371, 372, 99 P.2d 561, 562, the district court of appeal holds in a suit between husband and wife to partition a joint tenancy, where the wife died before the trial, that the husband "became the sole owner of the entirety by survivorship and in virtue of the original grant creating the tenancy. That was the common-law rule and it obtains in this state except as modified by statute. 7 Cal.Jur. 335, 'Cotenancy', sec. 4. We have no statute declaring that the mere fact one joint tenant files an action in partition works a severance of the tenancy."

True, as stated in United States v. Jacobs, 306 U.S. 363, 371, 59 S.Ct. 551, 555, 83 L.Ed. 763, in each of these California cases there was a "distinct shifting of economic interest, a decided change for the survivor's benefit" but, in California, it is not a change by transfer. The fact that the change in the survivor's interest in the property may be "the *occasion* for an excise" tax as held in United States v. Jacobs, does not make such a change in California a transfer from the decedent. That opinion clearly points out that by survivorship the tenancy "*remains* to the survivors." Id., 306 U.S. page 370, 59 S.Ct. page 555, 83 L.Ed. 763. In California the surviving cotenant no more has anything transferred to him on the other cotenant's death than does the grantee of a remainder in fee have anything transferred to him by the life tenant at the latter's death. Quite likely, the change by enhancement to the fee owner by the death of the life tenant could be made the "occasion" for an excise tax, but it would be a distortion of all California and common law concepts of property ownership to call the "change" a transfer from the life tenant.

The eighth circuit had before it the identical question concerning transfers under section 311, with reference to such a joint tenancy in corporate shares created in the State of Minnesota. It found the Minnesota courts, as in California, holding that on the death of one of the joint tenants no title was transferred to the survivor. The circuit court of appeals held that there was no transfer from the deceased cotenant to his survivor and hence no transfer under section 311 making the survivor liable for the deceased's federal income tax. Irvine v. Helvering, 8 Cir., 99 F.2d 265, 269.

The Board of Tax Appeals itself has held similarly in Smith v. Commissioner, 24 B.T.A. 807. It does not question that decision in its opinion here, but grounds its decision on the finality of the California court's decree of distribution, a contention later considered.

■ The Commissioner also suggests that taxation is " 'eminently practical' and is not to be restricted by refined technicalities of local law," citing Nicol v. Ames, 173 U.S. 509, 516, 19 S.Ct. 522, 43 L.Ed. 786; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, and Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788. Section 311 does not impose a tax on a transfer from the taxpayer to the transferee of taxpayer's property or any tax at all on the transferee. It merely provides a "new remedy for enforcing the existing 'liability, at law or in equity' " for collecting the tax due from the transferor. Phillips v. Commissioner, 283 U.S. 589–594, 51 S.Ct. 608, 610, 75 L.Ed. 1289; Phillips-Jones Corp. v. Parmley, 302 U.S. 233, 235, 58 S.Ct. 197, 82 L.Ed. 221. As was stated in the Conference Report on the bill for the Act of 1926, originally creating the remedy, "for procedural purposes the transferee is treated as a taxpayer would be treated." Id., Phillips v. Commissioner, 283 U.S. footnote, page 594, 51 S.Ct. page 610, 75 L.Ed. 1289.

■ We see nothing in section 311 which requires us to hold the character of the survivor of a joint tenancy in California held by its courts to be that of the common law to be a "refined technicality of local law." To sustain the Commissioner concerning such an estate in California would be a repudiation of Erie Railway Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, rather than an "eminently practical" extension of the federal power of taxation.

**B.** *In California its superior court, acting in probate, may distribute only such title as existed in the decedent. It is without jurisdiction to declare property to have belonged to decedent when it does not. Its decree purporting to distribute certain assets as from the decedent's estate may be shown in collateral proceedings not to have done so because the title was not in decedent at his death.*

This proposition is firmly established in California law. An exception arises where a claim to property is made by an executor adverse to the estate. This is due to his privity to the probate proceedings. Bauer v. Bauer, 201 Cal. 267, 272, 256 P. 820. Cf. Metzger v. Vestal, 2 Cal.2d 517, 523, 42 P.2d 67; Parsley v. Superior Court, 40 Cal.App.2d 446, 450, 104 P.2d 1073, where title is in the estate and the question is whether it is there as community or separate property.

In Bath v. Valdez, 70 Cal. 350, 360, 11 P. 724, 727, the supreme court says:

"It is the *estate* of the deceased upon which the probate court administers. It is the title which the deceased had in and to real property at the time of his death, or which has inured to the estate after death and before distribution, which passes to the heirs and devisees.

*"If there are outstanding or adverse claims to the estate vested in third parties, they are not affected by the probate proceedings,* save as in cases of liens, etc., especially provided for by statute. * * * The probate court may inquire if the estate has an interest in or title to real property, and, if this question is decided in the affirmative, may distribute such estate, but it has no jurisdiction to determine the quality of the title, whether it be good or bad, but will leave the parties to pursue their remedies in a proper forum." (Emphasis supplied.)

In Wittenbrock v. Wheadon, 128 Cal. 150, 152, 60 P. 664, 665, 79 Am.St.Rep. 32 the court held: "As the land was no part of the estate of Theodore Wheadon it was not subject to the probate jurisdiction of the superior court, and is not affected by the decree of distribution of his estate subsequently made by that court."

Again in Rockey v. Vieux, 179 Cal. 681, 682, 178 P. 712, 713, it is held: "The appellants contend that the decree of distribution is conclusive. Code Civ.Proc. § 1666. But it is conclusive only as to the rights of heirs, legatees, or devisees, in so far as they claim in such capacities. Chever v. Ching Hong Poy, 82 Cal. 68, 22 P. 1081; Cooley v. Miller & Lux, 156 Cal. 510, 105 P. 981. *It merely determines the succession to such title as the decedent may have had—it does not determine that he had any title.* 'Nor does it bind third parties who claim an interest adverse to that of the testator or intestate.' Archer v. Harvey, 164 Cal. 274, 278, 128 P. 410, 412, and cases cited." (Emphasis supplied).

And again in Pometti v. Laraia, 134 Cal. App. 545, 549, 25 P.2d 857, 859: "Appellants further claim that respondent is barred to assert any right except a life estate in the property, by virtue of the decree of distribution in the estate of Henrietta Pometti, deceased. *The decree of distribution distributed only such title as the testatrix had at the time of her death. If the testatrix does not own the property, obviously the decree of distribution passes no title.*"

Under California law the homestead estate is a sort of joint tenancy with the right of survivorship as between husband and wife. (11A Cal.Jur. 454). In Hart v. Taber, 161 Cal. 20, 118 P. 252, it was held that, since a homestead vested in a widow upon her husband's death, a subsequent order of distribution, distributing one-half the homestead estate to her and one-half to the children, was void and did not affect the homestead right. The court said, 161 Cal. page 21, 118 P. page 252: "The homestead vested absolutely in plaintiff upon the death of her husband. An order subsequently made by the probate court setting it aside to her and her children as a homestead would have been of no effect. See Saddlemire v. Stockton Sav. & Loan Soc., 144 Cal. [650] 651, 79 P. 381; [In re] Estate of Fath, 132 Cal. [609] 610, 64 P. 995, and cases therein cited. And upon like principle an order of distribution did not take away her homestead right, because the court was without jurisdiction to make the order."

In Williams v. Williams, 170 Cal. 625, 151 P. 10, 11, a collateral proceeding, it was held that a probate decree purporting to distribute to the husband, pursuant to a will of the deceased wife, a life estate in certain property in which she and her husband had a homestead right, transferred nothing to the husband. The husband was made executor. He probated the will and the court in the probate proceeding distributed the life estate to him in accord-

358

ance with the will. The husband later became aware of his rights and claimed his entire ownership of the property by virtue of the homestead.

The court's statement of its holding is "That the decree of distribution could not operate to divest the husband of this right must be manifest and is declared." The court also held in that collateral proceeding that because the husband's full title to the homesteaded land was vested in him upon his wife's death and nothing of it came to the wife's estate in probate, he could not be deemed to have made an election to take the life estate of the decree of distribution. Finally, it held that since there was nothing of the homesteaded property in the probated estate for the children there was no harm done them by the father's erroneous procuring, as executor, of the purported distribution to him of the life estate and hence no estoppel to his claim elsewhere of the full homestead title.

 Mrs. Botts gave to the administrator her receipt for her shares. Nevertheless, under the California law, she is entitled in this collateral tax proceeding to assert that her receipt was given in ignorance of her legal right, that nothing was transferred to her by the decree distributing the shares to her, that she made no election to take them as a transferee by the distribution, and that she is not estopped to show that their transfer to her was by the creation of the joint tenancy in July, 1933.

Bath v. Valdez, supra, and the succeeding cases discussed above were cited in petitioner's brief. The Commissioner's brief affords no aid to us in their consideration. It does not even mention them. Instead it relies upon Freuler v. Helvering, 291 U.S. 35, 44, 45; 54 S.Ct. 308, 311, 78 L.Ed. 634, a case in which no question is raised concerning the jurisdiction of a California court finally to determine title to the property distributed in a probate decree, in that case in accordance with the testament creating the trust.

On the contrary, the sole question there was the proper construction of the terms of the trust in the distribution of the *income* from the *property admittedly in the trust* estate. The Supreme Court states that the California court "*having jurisdiction of the trust*" determined that the income should be disposed of in a certain manner. The Commissioner of Internal Revenue otherwise construed the trust income provisions and assessed a tax. The administrator of the trust estate contended before the Board of Tax Appeals that the California court properly construed the trust terms with regard to the income, and that the income tax assessed was without warrant. The Board held with the administrator. On review the circuit court of appeals held with the Commissioner. 9 Cir., 62 F.2d 733. On certiorari the Supreme Court held that the decision of the California court was not res judicata supporting the administrator's contention in the proceeding before the Board of Tax Appeals and that the true state of the California law with regard to the income distributing terms of the trust could be determined in that collateral proceeding. However, the Supreme Court held against the Commissioner that the orders construing the income terms of the trust by a California court, which it found had "jurisdiction of the trust," could be regarded as a showing of the law of California and hence control in determining the taxability of the income.

 We cannot see how Freuler v. Helvering, supra, in any way aids the Commissioner here. On the contrary, it holds that the true state of the California law can be shown in this proceeding. Instead of the California court sitting in probate having jurisdiction over the property of a decedent held in joint tenancy, the law in California is shown to be that such property never comes within such probate jurisdiction, a fact that can be determined in any collateral proceeding concerning title to the property so jointly held.

 C. *The Board of Tax Appeals has found the creation in Mr. and Mrs. Botts of a joint estate in the shares by a transfer to them in July, 1933, nearly seven months before Mr. Botts' death.*

 On this issue of transfer from Mr. and Mrs. Botts as individual owners to themselves as joint tenants, it should be noted that the taxing act places the burden of proof upon the Commissioner to show there was a transfer after Mr. Botts' death. Section 1119(a) provides: "In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax." 26 U.S.C.A. Int.Rev.Code, § 1119(a).

The Board found that:

"For many years prior to March 1, 1934, James M. Botts was president of the American Marine Paint Co., hereinafter called the company, a corporation organ-

ized and existing under the laws of the State of California. In the year 1933 he was president, John Parker, vice president, and Carrie M. Botts, secretary, of the company.

\* \* \*

"On July 12, 1933, there were 1,980 shares of the capital stock of the company outstanding. On that date 1,749 of these shares were in the name of J. M. Botts and 204 shares stood in the name of C. M. Botts.

"James M. and Carrie M. Botts had contemplated placing their stock in a joint tenancy with right of survivorship. From the certificates issued in the names of J. M. and C. M. Botts, the following certificates dated July 12, 1933, signed 'C. M. Botts, Secretary' and 'J. M. Botts, President' were issued to 'J. M. Botts and C. M. Botts as joint tenants with right of survivorship':

| "Certificate No. | Shares |
|---|---|
| 45 | 500 |
| 46 | 420 |
| 47 | 199 |
| 48 | 818 |
| 49 | 17 |
| 51 | 4 |
| Total | 1,958 |

"On March 1, 1934, J. M. Botts died testate. \* \* \*."

The Commissioner contends that this finding of the acts of Mr. and Mrs. Botts does not determine that the shares were transferred to and held by them as joint tenants with right of survivorship, because there is not what the Commissioner calls a "finding" that "a joint tenancy had been created." Obviously, what the Commissioner so names as a "finding" is a conclusion of law to be drawn from the facts of Mr. and Mrs. Botts' transactions with the stock.

We do not know what words of transfer of shares would constitute a finding of their transfer, if it is not accomplished by the statement (1) that the 1749 shares and 204 shares of the American Marine Paint Company standing individually in Mr. and Mrs. Botts' names, respectively, were "their stock" (2) which they "contemplated" placing "in a joint tenancy with right of survivorship"; (3) that "from" their corporate certificates of individual ownership (4) "were issued" by Mr. and Mrs. Botts, "as president and secretary," respectively, of the Paint Company "to J. M. Botts and C. M. Botts as joint tenants with right of survivorship \* \* \* 1958 shares" in new certificates aggregating that amount.

With the Commissioner, in effect, in the position of plaintiff having the burden of proof that shares held by Mr. and Mrs. Botts in joint tenancy evidenced by certificates, just as a fee transfer is evidenced by a deed, were not transferred to them, the findings have every element required for a transfer. The Commissioner's pleading does not make any charge of lack of consideration or mutual mistake, but if it had these are negatived by the findings. The surrender of the individually owned shares shows the consideration, the contemplation of the transfer negatives absence of intent.

Nor does the Commissioner's pleading allege an estoppel or election, but if it had the case of Williams v. Williams, supra, establishes the California law that even a conscious acceptance of such property by its purported distribution through a probate decree does not estop the proving of such facts of a prior transfer as the Board's findings disclose and does not constitute an election to take by the decree rather than by the prior transfer.

None of the findings of Mrs. Botts' acts after she became the surviving sole owner of the shares overrides the finding of such a transfer prior to Mr. Botts' death. By Mr. Botts' will twenty percent of the stock "which shall stand in my name upon the books of said corporation at the time of my death" was given one John Parker. None so stood on the books of the Paint Company. On March 14, 1934, two weeks after Mr. Botts' death, Mrs. Botts had transferred to her, individually, the shares appearing in certificates 45 to 51 into certificates 52 to 57. The joint certificates 45 to 51 were marked cancelled and returned to the stock book of the Company. Later she brought suit against the executor of her husband's will and the corporation to quiet her title in her shares. Issue was joined but the case left pending.

Mr. Parker was pressing for his twenty percent and relied on a promise of Mrs. Botts, after her husband's death, that she would carry out his wishes as expressed in his will. She redeemed that promise, surrendered certificates 52 to 57 of her individual ownership issued after Mr. Botts' death and in lieu thereof had a certificate issued to Parker for 390.5 shares and the remainder issued to herself. They were issued as transfers from the certificates issued to Mr. and Mrs. Botts as joint tenants.

The stubs of certificates 52 to 57 were marked in the books Mrs. Botts kept as secretary as "cancelled—issued by mistake." This could not mean that the original joint tenancy certificates 45 to 51 were issued by mistake. Obviously, the mistake was in taking as an individual after Mr. Botts' death all of the issue 52 to 57 instead, as later corrected, of giving Mr. Parker his twenty percent.

The executor of Mr. Botts' estate did not return the 1749 shares of the joint tenancy in his first inventory of the estate's property. They were returned in his amended inventory. They were later included in his final account and petition for distribution. On this petition the court's decree distributed 390.5 shares to Parker and certain other property and 1358.5 shares to Mrs. Botts. Mrs. Botts gave the executor her receipt for all the property purported to have been distributed to her.

We hold in accord with Williams v. Williams, supra, and other cases considered above, that the shares were not the property of Mr. Botts' estate, were not transferred to Mrs. Botts from that estate, and that she has made no election or done anything by way of estoppel to prevent her from maintaining that the shares were transferred to her in July, 1933, seven months before Mr. Botts' death. Not only has the Commissioner failed to maintain his burden of proof that the shares were transferred to Mrs. Botts by the decree of distribution, but it is affirmatively shown to the contrary.

Reversed.

HEALY, Circuit Judge (concurring in part and dissenting in part).

The Board of Tax Appeals declined to inquire behind the decree of distribution of the Superior Court, holding that "the court's decree of settlement of the estate of James M. Botts is the law of the case." I agree with the majority that in this holding the board was wrong.

The board made no finding on the issue of the creation of a joint tenancy, although that was a matter in controversy before it. Indeed, the board appears to have thought itself foreclosed from resolving that phase of the dispute. There is a recital that Mr. and Mrs. Botts "had contemplated" placing the stock in a joint tenancy but there is no ultimate finding that they in fact did so.

An ultimate finding of that character would not here be mere conclusion of law, for there are other evidentiary recitals decidedly at variance with the thought that a joint tenancy relationship had in fact been created. The Commissioner contends that the relationship did not exist. While the board's recitals make it appear probable that a joint tenancy was effected, they do not eliminate the possibility of mutual mistake or other circumstance of that nature. One would want to study the whole evidence before making up his mind.

The evidence, however, is not before us. I think the case should be returned to the board for a specific finding on this issue.

On other phases I am in accord with the conclusions of the majority. It may be conceded that in a sense Mrs. Botts was a "distributee",[1] but it does not necessarily follow that she was a distributee of anything except her own property. The decree of the Superior court did not adjudicate the source or extent of her title to the stock. Her liability is by the statute, § 311(a) (1), made dependent upon a showing that she was "a transferee of property of [the] taxpayer." Manifestly a distribution to her of her own property, if such it was, did not make her either in fact or in law a transferee of property of the deceased taxpayer.

I think Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, is not in point and is of aid to neither party. Nor do I understand that the principle of Erie R. R. Co. v. Tompkins is relevant to the discussion. See Helvering v. Leonard, 310 U.S. 80, 85, 86, 60 S.Ct. 780, 84 L.Ed. 1087. What we are construing is a federal taxing act. Had it seen fit to do so, Congress could by definition have declared a surviving joint tenant a transferee of his deceased co-tenant for the purpose of collecting the tax. Congress has not done that, although the "shifting of economic interest" (United States v. Jacobs, 306 U.S. 363, 371, 59 S.Ct. 551, 555, 83 L.Ed. 763) which undoubtedly takes place upon the death of a joint tenant would be ample warrant for so treating the survivor. It is on the basis of this accretion to the survivor that the Commissioner urges a broad construction of the word "transferee" as used in the federal statute, not because of any lack of understanding on the Commissioner's part of the legal attributes of a joint tenancy estate in California.

---

[1] The statute, Section 311(f), defines transferee as including "heir, legatee, devisee, and distributee."