[Sac. No. 4849.   In Bank.—February 27, 1935.]

D. J. METZGER et al., Appellants, v. ROLLA VESTAL et al., Respondents.

Huston, Huston & Huston for Appellants.

W. P. Johnson and George F. Jones for Respondents.

WASTE, C. J.—This is an action in equity, based on alleged fraud and mistake, to have it decreed that the defendants hold certain property in trust for the plaintiffs.

The court below found against the plaintiffs on the issues of fraud and mistake and gave judgment for the defendants. This appeal followed.

The record, which we have examined in detail, discloses that prior to 1896 George W. Vestal, deceased, was engaged in the butcher business in the town of Red Bluff. He and his wife, Clara Vestal, assignor of the plaintiffs herein, then owned as community property two pieces of real property and the butcher business referred to. On one parcel of this real property the butcher business was situated. The other parcel was known as the "Vestal Ranch". The year 1896 found the spouses in serious financial difficulties, their properties being heavily mortgaged and the business being operated on a nonprofit basis. There is evidence that the spouses were about to lose the properties and business. In order to alleviate this condition and in an attempt to place the business on a paying basis, the decedent prevailed upon his minor son, Rolla Vestal, one of the defendants herein, then approximately eighteen years of age, to abandon his schooling and devote his time and energy to the rehabilitation of the business. As compensation therefor he promised to give his son one-half of the business when cleared. For some time thereafter the son not only worked in the butcher shop by day, but slept on the premises, and away from home, at night. When the son became of age he was taken in as a partner, the firm then being advertised as "G. W. Vestal & Son". This was entirely agreeable to plaintiffs' assignor, the wife of George W. Vestal, and mother of the boy. Within a reasonable period of time the business was again placed on a paying basis, apparently as the result of the joint efforts of father and son. In due time all debts and encumbrances were paid off and discharged. The record indicates that much credit therefor should be given to the son. At the suggestion of the parents, and after several conferences with counsel, attended by the father, mother and son, a corporation was formed in 1904 to carry on the then steadily growing business. This corporation was known as the George Vestal Company, and to it the spouses conveyed, by ordinary grant, bargain and sale deed, the two parcels of community real property theretofore owned by them and above referred to. As a part of the same transaction leading to the creation of the corporation and the transfer to

it of the real property of the spouses, it was agreed that George Vestal, the father, should receive 475 shares of the corporate stock, that Rolla Vestal, the son who had done much toward rebuilding the business, should receive a like number of shares, viz., 475, that Clara Vestal, the wife of George Vestal, and mother of Rolla, who with her husband had transferred their community real property to the corporation, should receive 45 shares of the corporate stock, that the defendant Ethel Gist, a daughter of George and Clara Vestal, and sister of Rolla Vestal, should receive 4 shares and that her husband, the defendant Robert Gist, should receive 1 share of the corporate stock. The shares of the latter two were apparently only qualifying shares so that they, with the other three named shareholders, might serve as directors of the corporation. Each of the said five shareholders and directors of the corporation, including Clara Vestal, the plaintiffs' assignor, signed the articles of incorporation wherein, among other things, it is provided that each had subscribed for the number of shares, just mentioned, appearing opposite his or her name. There is evidence that certificates representing their shares were delivered to the respective shareholders, though each thereafter, apparently as a matter of precaution and security, placed the certificates in a common box. Subsequent to the formation of the corporation the business which it assumed continued its upward trend, several parcels of real property being purchased, from time to time, in the corporate name. At no time did any of the shareholders, or members of the family, voice any objection to the disposition or division made of the corporate stock. Matters so progressed until 1918 when George W. Vestal, the father, died. His will, after making several specific bequests, provided: ''I give, devise and bequeath to my wife, Clara Vestal, and to my son, Rolla Vestal, in equal shares, all of the rest, residue and remainder of my property, both real and personal, of whatsoever kind or nature and wheresoever situated, including notes, mortgages, stocks, bonds, and every security, or representative of value or property.'' The will was duly admitted to probate. The inventory thereafter filed by the executor thereof showed that the residue of the decedent's estate consisted principally of the 475 shares of the capital stock of the George Vestal Company standing in the de-

cedent's name from the date of incorporation of that company. Accordingly, on March 29, 1920, after expiration of the period provided for notice to creditors, a decree of distribution was entered which, after first caring for the specific bequests of the testator, distributed the residue of the estate "in equal shares" to Clara Vestal, the surviving spouse, and Rolla Vestal, the son, mentioned with the former in the residuary clause of the will. It is to be here noted that the decree of distribution employed the identical terms of the residuary clause of the will in measuring the shares of the respective residuary legatees. The decree, in addition to specifying as part of the residue of the estate the 475 shares of stock in the George Vestal Company standing in the decedent's name, also provided "that the *whole* of the residue of said estate . . . and any other property not now known or discovered, . . . be and the same is hereby distributed as follows: To Clara Vestal, surviving widow of said deceased, and Rolla Vestal, a son, the *whole* of the said residue *in equal shares, that is to say, share and share alike.*" No appeal was taken from this decree. The surviving widow, though having full notice of all steps taken in the probate proceeding and having been repeatedly advised by her son Rolla to procure any necessary and independent legal advice considered advisable, at no time offered objection to any portion of the probate proceeding. On November 6, 1922, more than two years after the entry of the decree of distribution, the surviving widow assigned and sold to the plaintiffs herein her interest in the 45 shares of stock allotted to her upon the incorporation of the George Vestal Company and also her interest in the 237½ shares of stock in the same company which came to her under the decree of distribution entered upon the probate of her deceased husband's will. Two days thereafter the widow executed an instrument which purported to assign to the plaintiffs all of her right, title and interest, past, present and future, in and to the estate of her deceased husband. In passing it might be noted that the 282½ shares of stock purchased by the plaintiffs from the widow were later sold by them to the defendant Schafer who subsequently sold and transferred said shares to the son Rolla. These various transfers were entered on the corporate books and the stock certificates were adjusted accordingly.

Thereafter and on February 9, 1923, approximately nineteen years after the creation of the corporation and the division of the corporate stock as above indicated, and approximately three years after the entry of the decree of distribution, the original complaint in this action was filed. By the second amended complaint, upon which the cause went to trial, the plaintiffs, who are strangers to the Vestal family, seek, as assignees of the widowed mother, to assault and destroy an amicable family arrangement of many years' standing. They attempt to accomplish this result by alleging that their assignor, by means of fraud and mistake, was improperly deprived of her full share of the community property accumulated by her and her deceased husband during their joint lives. As such assignees they urge that the defendant Rolla Vestal holds in trust for them certain of such community property, represented by the corporate shares of stock. They ask that such trust be declared and that their title to the trust property be quieted.

In effect, their attack is divided into two parts. As to the 475 shares of stock issued in the name of Rolla Vestal, the son, in 1904 when the corporation was formed, it is contended, in substance, that there was an improper diversion or gift of community property without the written consent of the wife, plaintiffs' assignor. There is no merit in the contention. It is elementary that for a transfer by the husband of community personal property to be voidable at the suit of the wife it must be shown to have been made not only without her written consent but also without consideration. (*Spreckels* v. *Spreckels*, 172 Cal. 775, 784 [158 Pac. 537].) In view of the above-described valuable personal services rendered by the son Rolla both to the partnership predecessor and to the corporation itself, we are not satisfied that the transfer to him of 475 shares of the corporate stock was unsupported by a consideration so as to constitute a gift.

However, conceding, for present purposes only, that such transfer did amount to a gift, we are of the opinion that the wife, plaintiffs' assignor, consented thereto in writing. As already pointed out, the division of the corporate stock at the inception of the corporation was in accordance with an oral agreement or undertaking among the parties that such division should be made in consideration of the

spouses transferring to the corporation their community property, and the son, Rolla, his interest in the business partnership then existing and for many years prior thereto operated by Rolla in conjunction with his father. When the wife, plaintiffs' assignor, joined with her husband, the decedent, in executing and delivering to the corporation a grant, bargain and sale deed covering the community property, in consummation of such agreement, and thereafter, with the other stockholders of the newly formed corporation, appended her signature to the articles of incorporation, wherein the shares of corporate stock were distributed as previously agreed, she must be held to have consented in writing to such disposition and division of the community property. (*Spreckels* v. *Spreckels, supra,* 788.) The trial court's finding on this phase of the litigation is therefore amply supported. ■ Moreover, this conduct of the wife, even if held not to amount to a joinder in writing of the assumed gift, would at the least have to be held to constitute a written ratification thereof. (*Spreckels* v. *Spreckels, supra,* 785–788.)

■ We now direct our attention to the other portion of plaintiffs' attack having to do with the 475 shares of stock in the Vestal Company standing in the name of George W. Vestal, deceased, from the date of the incorporation of that company in 1904. It is urged, and the trial court found, that these shares were the community property of the spouses. In fact, they were so regarded in the inventory filed in the probate proceeding, and there now can be no question as to their community character. As to these shares it is the plaintiffs' contention that their assignor was entitled to one-half thereof as survivor of the community and to one-half of the remainder under the terms of the residuary clause of the decedent's will. In support of this claim they advance two theories. The first is that "in making the decree of distribution" the probate court had in mind distributing only the decedent's one-half interest in said 475 shares and that a proper construction of the decree therefore entitled the wife, plaintiffs' assignor, to 75 per cent, or 356¼, of said shares and having received but 50 per cent, or 237½, of these shares, the defendant Rolla Vestal holds 25 per cent, or 118¾, of said shares in trust. This theory is untenable. The decree of distribution in the

estate of George W. Vestal, deceased, does not, as urged by plaintiffs, undertake to dispose solely of the decedent's interest in these 475 shares. This is apparent from the decree itself wherein these 475 shares are referred to in describing the residue of the estate and wherein distribution is made of the "whole of the residue of said estate" to the wife and son Rolla, "share and share alike."

As their alternative theory, the plaintiffs urge that if the decree of distribution is not capable of the construction advanced by them, and we have determined that it is not, then the son Rolla Vestal must be held to have gained an unconscionable advantage through mistake in the entry of the decree. Under this theory, the decree is said to be erroneous in that it distributed to the wife only one-half of the 475 shares standing in her deceased husband's name, whereas she was entitled to have three-fourths thereof distributed to her. In so far as this theory may rest on any error of the probate court in interpreting either the terms of the will or the law applicable thereto, it must be held to be without merit for the decree has become final and may not now be attacked on such grounds. (*Cunha* v. *Hughes*, 122 Cal. 111, 112 [54 Pac. 535, 68 Am. St. Rep. 27]; *Metzger* v. *Vestal*, 76 Cal. App. 409, 413 [244 Pac. 942].)

Plaintiffs seek to avoid this result by referring us to that line of cases wherein it is held that equity has jurisdiction, even though a decree of distribution has become final, to afford a remedy for an erroneous distribution of property or to construe a declaration of trust when it appears the decree of distribution was procured by fraud or mistake. They refer us principally to *Bacon* v. *Bacon*, 150 Cal. 477 [89 Pac. 317]. We have no quarrel with the principle announced in the cases relied on by plaintiffs. In our opinion, that principle is not applicable to the present cause. Examination of the authorities discloses that "a judgment or decree of a court of competent jurisdiction can be set aside for fraud only where the fraud alleged is shown to be extrinsic or collateral to the matter which was tried and determined by such court, as opposed to intrinsic or direct fraud practiced in the presentation of the proceedings coming before the court. . . . As types of extrinsic fraud, the courts of appellate jurisdiction of this state have adopted the classic definition, found in *United States* v. *Throck-*

*morton,* 98 U. S. 61 [25 L. Ed. 93], in which the Supreme Court of the United States said: 'But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' . . . The gravamen of the rule thus expressed lies in the fact that 'the unsuccessful party has been prevented from exhibiting fully his case'." (*Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317, 322].)

"The acts alleged to constitute extrinsic fraud must be such as to operate to prevent the heir from appearing in the probate court, and thus contesting the proceedings then before the court, and exhibiting in its entirety his case against the action sought for being taken, whether it be the probate of a will, or a petition for final distribution; otherwise a court of equity is without jurisdiction to afford relief." (*Abels* v. *Frey,* 126 Cal. App. 48 [14 Pac. (2d) 594].)

The evidence and findings in the present case negative any theory of actionable fraud. Plaintiffs' assignor, as stated above, had full knowledge of all steps taken in the probate proceeding. She was advised by the defendant Rolla Vestal to procure independent legal advice pending such proceeding and there is some evidence that she procured such advice. The findings of the trial court are full and, under the evidence, binding on these matters.

Nor do we think plaintiffs have proven a case warranting the intervention of equity because of mistake. In

526

*De Tray* v. *Chambers,* 112 Cal. App. 697, 699 [297 Pac. 575], it is said that "something more is required in an action in equity to set aside a judgment which has become final, than a mere showing of mistake." In *Caldwell* v. *Taylor,* 218 Cal. 471, 477 [23 Pac. (2d) 758, 88 A. L. R. 1194], and in *Clavey* v. *Loney,* 80 Cal. App. 20 [251 Pac. 232], it is declared that "the fact that by mistake an entire interest in property was by decree of distribution distributed to one entitled to only a fractional interest therein would not, in the absence of extrinsic fraud, warrant equitable relief".

The evidence and findings herein preclude any recovery, under the authorities, on the theory of actionable fraud or mistake. The case of *Bacon* v. *Bacon, supra,* relied on by plaintiff is distinguishable in that the injured party there failed to appear in the probate proceeding involved because of the actual and constructive fraud of the defendants. Such is not our case. Moreover, that case contains the following language: "If the plaintiff had been present at the hearing, contending that the will gave her ten thousand dollars, had presented the point to the court, and the court had thereupon read the word 'ten' as 'two', and had made the distribution as it was made by the judgment appealed from, no doubt she would be precluded from any relief by way of equitable review, no matter how plain the mistake of the court would appear. The mistake would then be a mere error in the consideration of the evidence in a case fully presented to the court, an error of the class which human tribunals are subject to in any case, and which cannot be reviewed in equity. There would also be a complete remedy at law. The party injured would have timely notice of the error and could pursue the usual mode of review by motion for a new trial and appeal."

In conclusion, the evidence and findings, which are amply supported, negative plaintiffs' further contention that the corporation was a mere instrument created and adopted for the purpose of carrying on the business operations of George W. Vestal, deceased, and to hold the community property of said George Vestal and his wife, the plaintiffs' assignor.

The judgment is affirmed.

Curtis, J., Langdon, J., Preston, J., Shenk, J., Thompson, J., and Seawell, J., concurred.