The TRAVELERS INSURANCE COMPANY, a Corporation, Plaintiff,

v.

Jewell Lewis WALDEN and Jessie L. Lewis, Defendants.

Civ. A. No. 1387–N.

United States District Court
M. D. Alabama, N. D.
March 20, 1958.

Rushton, Stakely & Johnston, Montgomery, Ala., for plaintiff.

L. H. Walden, Montgomery, Ala., Godbold, Hobbs & Copeland, Montgomery, Ala., and Charles Legeman, Long Beach, Cal., for defendant Jewell Lewis Walden.

James C. Webb, Long Beach, Cal., Miles S. Hall, Montgomery, Ala., Clyde Doyle and Preston W. Johnston, Long Beach, Cal., for defendant Jessie L. Lewis.

JOHNSON, District Judge.

The above-styled cause, coming on to be heard, was tried by the Court without a jury on the issues made up by the pleadings and proof. On consideration of the evidence, consisting of the oral testimony of several witnesses, the testimony of several witnesses by deposition, together with the exhibits to the testimony of several witnesses, the stipulations of the parties as entered into and made a part of the record, and the arguments and briefs filed upon behalf of the parties, this Court now proceeds in this memorandum opinion to make and enter the appropriate findings of fact and conclusions of law.

This action was initiated by The Travelers Insurance Company, a corporation, by a bill of interpleader brought as provided by Title 28 U.S.C.A. § 1335. Plaintiff at the time this action was filed paid into this Court the amount of $5,474.70, which sum is due the beneficiary or beneficiaries on the policy of insurance (Group Policy G-8700 issued to The Texas Company by this plaintiff, and Certificate No. 50874 issued by The Texas Company to the deceased) issued upon

the life of Edwin L. Lewis, who is now deceased. Plaintiff asks this Court to determine which of these defendants—both of whom assert claims to the full amount paid into Court by the plaintiff, which, it is agreed by all, is the full amount due on the policy—is entitled to the proceeds to the said policy. Plaintiff also seeks to have this Court award its attorneys a reasonable attorney's fee for prosecuting this action.

The defendant Jessie L. Lewis, presently residing in the State of California and the insured-deceased, Edwin L. Lewis, from the period commencing in 1934 and continuing until 1941 lived together as husband and wife in the State of Alabama, and by their actions and intent established what is recognized by law in the State of Alabama as a common law marriage. The deceased, Edwin L. Lewis, and his common law wife, Jessie L. Lewis, departed the State of Alabama in 1941 and resided in the State of New York until 1945, at which time they moved to the State of California, established a residence there, and remained there, living as husband and wife until January of 1957. In the year 1945, after they had taken up residence in the State of California, Edwin L. Lewis was employed by The Texas Company, and on or about July 9, 1945, the plaintiff issued the Certificate No. 50874, under its Group Policy G-8700, insuring the life of Edwin L. Lewis. Under the policy and the certificate, the plaintiff agreed to pay the sum of $5,400 (the additional sum of $74.70 represents interest due) to the wife of Edwin L. Lewis, now the defendant Jessie L. Lewis, upon the death of the insured, Edwin L. Lewis. Sometime in the year 1953, or early part of 1954, Edwin L. Lewis suffered what was referred to in the testimony as a stroke. He was retired by The Texas Company in the year 1954, and the policy involved in this litigation was, according to its terms, paid up. From the time this policy was issued and continuously thereafter during all the times the premiums were paid thereon, the deceased, Edwin L. Lewis, and the defendant Jessie L.

Lewis were husband and wife and were domiciled in and residents of the State of California. All the premiums paid upon this insurance were paid from and out of the wages of Edwin L. Lewis while he was an employee of The Texas Company in the State of California.

After Edwin L. Lewis recovered from the initial shock of his stroke and after he was released from the hospital sometime in the latter part of 1953, or the early part of 1954, he commenced to indulge to an excessive degree in the drinking of alcoholic beverages. This continued until he and his wife separated in the early part of January, 1957. This separation was far from being an amicable one.

The defendant Jewell Lewis Walden, a resident of this district in the State of Alabama and a sister to the deceased, Edwin L. Lewis, upon being requested by her brother, went to the State of California in January of 1957 and returned to this district in the State of Alabama with Edwin L. Lewis. From that time until his death in August of 1957, his death being caused by accidental drowning, Edwin L. Lewis resided in the home of the defendant Jewell Lewis Walden here in Montgomery, Alabama, as a guest. The defendant Walden and her husband paid all of the expenses of Edwin L. Lewis, including his medical and doctors' bills and his burial expenses. The testimony is without dispute that Edwin L. Lewis was not charged anything for staying in the Walden home. None of the monies advanced to him by the Waldens were advanced as loans; to the contrary, all money and services from the Waldens to Edwin L. Lewis were gifts.

After Edwin L. Lewis and his wife separated, his wife remaining in California and he returning to Alabama with his sister, Jewell Lewis Walden, Edwin L. Lewis on February 7, 1957, executed a change of beneficiary form (this being authorized by the policy) naming the defendant Jewell Lewis Walden as the beneficiary of his insurance policy. This change of beneficiary form was executed

in the proper and legal manner and acknowledged by the plaintiff-company. A duplicate certificate was issued by the plaintiff-company to Edwin L. Lewis, which duplicate certificate was presented to the defendant Jewell Lewis Walden by her brother, Edwin L. Lewis, several months before he died.

The defendant Lewis contends that the deceased, Edwin L. Lewis, was mentally incompetent at the time he executed any change of beneficiary in favor of the defendant Jewell Lewis Walden, and executed said change of beneficiary by reason of undue influence and duress, and for this reason the change of beneficiary dated February 7, 1957, is void and of no effect. The defendant Lewis further contends that the premiums on this insurance policy were paid from community funds, that she was the wife of the insured, Edwin L. Lewis, during the time these premiums were paid, that she did not consent to a change of beneficiary or to a gift of the proceeds of this policy, and that, therefore, she is entitled to fifty per cent of the proceeds of the policy under the law of the State of California even if there was a valid change of beneficiary.

The defendant Walden contends that the community property law of the State of California does not apply; that if it does apply, the change of beneficiary by the deceased Lewis on February 7, 1957, was made by the insured Lewis for a valuable consideration and was in law an assignment of the policy to the defendant Walden. The defendant Walden further contends that the change of beneficiary dated February 7, 1957, was executed by Edwin L. Lewis while he was mentally competent and of his own free will.

The issues are, therefore, as follows:

(1) Was the change of beneficiary form GI-16776, dated February 7, 1957, executed by Edwin L. Lewis, and, if so, was he mentally competent and did he execute same of his own free will?

(2) If the Court finds that he did execute said beneficiary form while

he was mentally competent and of his own free will, then does the community property law of the State of California apply, and, if so, was this policy a community asset that could not be given away or exchanged for a valuable consideration without the written consent of the wife?

(3) If it could be sold or assigned for a valuable consideration by the husband without the consent of his wife, was there valuable consideration in this case?

This Court finds that after Edwin L. Lewis suffered the stroke and was hospitalized in the latter part of 1953 or the early part of 1954, he may have had some difficulty with his mind, which difficulty was probably caused or at least aggravated by his excessive drinking which had been going on for some time and continued possibly on up until he was returned to the State of Alabama by his sister, Mrs. Walden, in January of 1957. It is not disputed by any of the parties that he continued to suffer, on up until the time he died, with a physical impairment manifested by a partial loss of use of his right arm and right leg with some apparent facial paralysis. However, there is no evidence to sustain the contention made by the defendant Lewis that he was mentally incompetent at the time he executed the change of beneficiary form on February 7, 1957. To the contrary, all of the evidence presented to the Court clearly showed that Edwin L. Lewis was in full possession of his mental faculties from the time he returned to Alabama and stopped his excessive drinking, which was in the early part of January, 1957, until his death in August of the same year. He understood what he wished to do and the manner in which he wished to do it; this was true notwithstanding his bodily infirmity. His mind was not impaired to such an extent that he could not transfer any property he had if he could otherwise legally do so. See Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637.

This Court also finds that no one took advantage of Edwin L. Lewis to such an extent that he was deceived or imposed upon in executing this change of beneficiary. This Court specifically finds that he executed this change of his own free will and accord, and that there was no undue influence or duress practiced upon him. See Smith v. Smith, 254 Ala. 404, 48 So.2d 546.

Therefore, as to that phase of this case, this Court concludes that Edwin L. Lewis was mentally competent when he executed the change of beneficiary form GI-16776 on February 7, 1957, which change designated the defendant Jewell Lewis Walden as the beneficiary of the insurance involved, and the Court further concludes that he executed this form and made this change of his own free will.

As has been stated, Edwin L. and Jessie L. Lewis, because of the fact the State of Alabama recognizes common law marriages, were, when they departed the State of Alabama, man and wife as far as the law is concerned. The evidence is not disputed that they occupied the same status when they established their residence in the State of California in 1945. As provided by § 63 of the Civil Code of the State of California, this marriage that had been contracted between Edwin L. Lewis and this defendant Jessie L. Lewis in the State of Alabama was recognized by the State of California as being valid. In this connection, also see Colbert v. Colbert, 28 Cal.2d 276, 169 P.2d 633, which specifically holds that § 63 of the California Civil Code recognizes common law marriages that had been validly contracted in a sister state. We, therefore, reach the question as to what rights defendant Jessie L. Lewis acquired in this insurance policy by virtue of the fact she was the wife of Edwin L. Lewis and the further fact that the premiums on the insurance policy were paid while they resided as husband and wife in the State of California and were paid with community funds.

The statutory law of the State of California relating to this question is as follows:

California Civil Code, § 162:

"All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. The wife may, without the consent of her husband, convey her separate property."

California Civil Code, § 163:

"All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property."

California Civil Code, § 164:

"All other property acquired after marriage by either husband or wife, or both, including real property situated in this State and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State, is community property;"

There have been many cases decided by the appellate courts of the State of California concerning the changing of beneficiaries on insurance policies where the premiums have been paid with community funds. The general rule is stated in the case of Grimm v. Grimm, 26 Cal. 2d 173, 157 P.2d 841, wherein the court held that where all premiums were paid with community funds, then the policy was community property and that even though the insurance contract may provide that the insured husband has the right to change the beneficiary without the wife's consent where she is named as such, any change of beneficiary without her consent and without a valuable consideration is voidable, and after the death of the husband the wife may maintain an action for her community share in the proceeds of the policy.

The Federal courts have recognized the application of the community property statutes. Such a case—which incidentally also concerned an insurance

policy—is that of California Trust Co. v. Riddell, D.C., 136 F.Supp. 7, wherein the court held that insurance policies purchased with community funds were community property and that even though the husband retains possession and control of community personal property, he could not deprive the wife of her community interest therein without her consent.

Thus, this Court now must, by applying the facts of this case to that law, conclude that the insurance policy involved in this case was community property because it was paid for with community funds while the husband and wife resided in the State of California and nothing had been done by either of them to dissolve the community status of the property. Edwin L. Lewis could not, therefore, make a gift of the share that belonged to the defendant Jessie L. Lewis by designating his sister, Jewell Lewis Walden, as the sole beneficiary except by the written consent of the defendant Jessie L. Lewis; this she did not give. This is true, even though the insurance contract authorized the insured to change the beneficiary without the wife's consent. There is no doubt but that Edwin L. Lewis could without his wife's consent bestow his community interest of the proceeds from this insurance policy upon his sister by gift, but he could not do this as to his wife's share without her consent *unless he did so for a valuable consideration*. The leading case on this particular point is Union Mutual Life Insurance Co. v. Broderick, 196 Cal. 497, 238 P. 1034. See also Metzger v. Vestal, 2 Cal.2d 517, 42 P.2d 67.

The evidence in this case is without conflict that Jewell Lewis Walden, the sister of the insured-deceased, took him into her home in January of 1957, where he remained as a nonpaying guest until his death in August of 1957. There is no doubt but that Jewell Lewis Walden and her husband bestowed upon Edwin L. Lewis all of the kindness and love they could during this period. There is no doubt but that this attitude on their part toward him was of a considerable benefit to him during this period of physical difficulty, manifested by the "stroke" and marital discord. However, the testimony is without dispute that no charge was made by the Waldens for keeping him in their home. They were doing this, as each of them testified, "free of charge." Without any doubt, Edwin L. Lewis made this change of beneficiary out of gratitude to his sister, Jewell Lewis Walden. This does not mean, however, that he did it because he was under a legal or moral obligation to do so. Quite to the contrary.

It therefore follows that the change of beneficiary executed by Edwin L. Lewis on February 7, 1957, in favor of Jewell Lewis Walden was not made for a valuable consideration. This does not mean that there was no consideration passing from Jewell Lewis Walden to Edwin L. Lewis during this same period, but it does mean that this consideration that was passing from her to him was not a consideration for the change of beneficiary that is in question in this case.

Therefore, this change of beneficiary, since it was made by Edwin L. Lewis when he was mentally competent, since it was made without undue influence and without duress, and was made of his own free will, operated as a change of beneficiary to the extent that all of Edwin L. Lewis's interest in this insurance policy was changed for the benefit of Jewell Lewis Walden. It also follows that since the defendant Jessie L. Lewis did not consent to this change of beneficiary and since there was no valuable consideration for the change, it did not operate to divest her of her one-half interest in this community property.

This Court specifically holds that the Broderick case, cited above, is not, as the defendant Walden insists, here controlling, since it is quite obvious to this Court that the California court in the Broderick case made the exception to the general rule, because of the actual loan of the $1,000 that had been made in that case; such does not exist in this case, and this Court declines to find that there was a valuable consideration here

for the substitution of the sister in place of the wife.

■ Plaintiff in this case, The Travelers Insurance Company, a corporation, was by each of these defendants making a claim for the entire proceeds of this one policy, placed in the position of possibly having to litigate this matter in the State court of Alabama and the State court of California, or deciding at its peril which of these claims was the better one and facing a possibility of double liability.[1] This plaintiff was placed in this position through no fault of its own. After being placed in this perilous position, it pursued the only course available to it, and through its attorneys filed and prosecuted this interpleader action. Plaintiff in this case should not be required to pay the attorney's fee to its attorneys for the services they have rendered herein. Since the adverse claimants placed the plaintiff in this position and by doing so necessitated this legal proceeding, they should be required to pay the attorneys for the plaintiff a reasonable attorney's fee for filing and prosecuting this interpleader action. In view of the fact that the parties have— as evidenced by this Court's pre-trial order of February 13, 1958—stipulated that this Court may, without any proof, determine and award what it considers to be a reasonable attorney's fee, this Court has reviewed this matter with that question in mind and specifically finds that the sum of $450 is a reasonable sum to be paid to the firm of Rushton, Stakely & Johnston, Attorneys at Law, Montgomery, Alabama, for filing and prosecuting this action.

The Clerk of this Court will be ordered and directed to disburse from the sum of $5,474.70 all costs of court incurred in this proceeding, the sum of $450 to Rushton, Stakely & Johnston, as an attorney's fee, and to divide the remaining part of said money between the defendant Jessie L. Lewis and the defendant

Jewell Lewis Walden. These disbursements will be made by the Clerk of this Court in the order just enumerated.

The judgment will be entered in conformity with the foregoing.

of California, said suit being filed by her several weeks after she was served in this action.

---

1. As a matter of fact, this Court had to restrain and enjoin the defendant Lewis from proceeding in a suit filed by her against this plaintiff in the State courts