[No. B144463. Second Dist., Div. Four. May 14, 2003.]

DEBORAH A. KAVRUCK et al., Plaintiffs and Appellants, v.
BLUE CROSS OF CALIFORNIA, Defendant and Respondent.

774

## COUNSEL

Robert S. Gerstein; Gianelli & Morris, Robert S. Gianelli and Sherril Nell Babcock for Plaintiffs and Appellants.

Stephan, Oringher, Richman & Theodora, Gordon E. Bosserman, Robert M. Dato and Terrence M. King for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—This is an appeal from summary judgment in favor of Blue Cross of California (Blue Cross) in a class action. The class is made up of subscribers whose health insurance policies were changed so that their premiums were no longer based on their initial enrollment age but on their attained age at the time of renewal. We conclude there are triable issues of material fact whether Blue Cross breached these contracts, precluding summary judgment. We reverse the judgment. We affirm the order denying

class certification as to the causes of action for fraud, negligent misrepresentation, and unfair competition.

## FACTUAL AND PROCEDURAL SUMMARY

In 1984, Deborah A. Kavruck purchased a Blue Cross individual health insurance policy which provided that premiums would be rated based on the subscriber's initial enrollment age. (We refer to this type of policy as an "entry age" policy.) In 1987, Blue Cross stopped marketing these entry age policies, but the existing entry age policies remained in effect. In 1994, Blue Cross transferred subscribers with entry age policies (contract Nos. 1002, 1708, 1709, 1918) into new policies, in which premiums were calculated based on the subscriber's actual age at the time of renewal. (We refer to this type of policy as an "attained age" policy.)

Ms. Kavruck is one of the entry age subscribers whose policy was transferred. She brought this action on behalf of herself and other similarly situated subscribers, alleging breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair competition. She also sought declaratory relief. Her action was certified as a class action as to the breach of contract, breach of implied covenant, and declaratory relief causes of action.

In the operative pleading (the second amended complaint), plaintiff alleged that under the terms of her contract with Blue Cross, "plaintiff was to pay premiums based upon her age at the time she first purchased a Blue Cross policy in 1984." Blue Cross allegedly breached this agreement when it notified her that "it was no longer going to observe its obligation to base premiums on her age at the time she first purchased a Blue Cross policy in 1984 and would instead calculate her premiums based upon her age at the time of each premium increase or recalculation. Effective January 1, 1996 Blue Cross dramatically raised plaintiffs [*sic*] premiums based upon her attained age."[1]

In its initial motion for summary judgment, Blue Cross relied on a provision in plaintiff's contract and in the three other contracts at issue, which stated: "Any provision of this Agreement which, on its effective date, is in conflict with any applicable statute, regulation or other law is hereby amended to conform with the minimum requirement of such law." Blue

---

[1] The court granted Blue Cross's motion to strike a new theory presented in the second amended complaint, that Blue Cross imposed on the transferred subscribers a 20 percent premium surcharge. That issue is presented in a separate class action, *Kirchner v. Blue Cross of California* (Super. Ct. L.A. County, No. BC217946).

Cross asserted that since the entry age contracts were all closed blocks of business, it was required to transfer them to open blocks of business in order to comply with Health and Safety Code section 1367.15.[2] It claimed this action was taken in order to conform the contracts to law, and hence was not a breach of contract because it was authorized under the provision in the contracts we have just quoted. Blue Cross also asserted that the Department of Corporations (DOC) had expressed concern over whether the transfers complied with the statute; that the DOC had investigated the transfers; and that Blue Cross and the DOC had engaged in lengthy negotiations leading, ultimately, to a settlement under which Blue Cross took remedial steps to restore benefits and rebate premiums to individuals affected by the transfers. The court denied summary judgment, finding that "Blue Cross' asserted compliance with Health & Safety Code § 1367.15 does not excuse its contractual obligations, as this is a contract issue, not a regulatory issue."

In its second motion for summary judgment, Blue Cross asserted that another provision in the entry age contracts gave it the right to cancel or modify the contract (including a change in the premiums) upon 30 days' written notice. In opposition, plaintiff acknowledged that Blue Cross reserved the right to change subscription charges, but argued that the contract said nothing about changing rating methods. Plaintiff asserted that the contracts each contained an express limitation on Blue Cross's power to modify, providing for a change in initial enrollment age rating only if the contract type changed. Plaintiff also argued that under the contracts, any changes could be made only through an endorsement signed and authorized by a Blue Cross officer, and that requirement was not satisfied with respect to the change from entry age rating.

The court gave Blue Cross an opportunity to amend its summary judgment motion to address this new issue of compliance with the procedural requirements for modification. The court ultimately concluded that the contracts expressly permitted modification or termination on 30 days' notice; that plaintiff had failed to allege noncompliance with the contract requirements for modification or termination; and that the evidence submitted in support of the amended motion established as undisputed that plaintiff had received timely and adequate notice of the change from entry age rating to attained age rating in accordance with the terms of her contract. On this basis, the court concluded there was "no triable issue of material fact concerning the propriety of Blue Cross' exercise of its express right under the agreement to modify the entry-age rating provision."

---

[2]All statutory references are to this code unless otherwise indicated.

DISCUSSION

I

The issue before us is whether Blue Cross has established as a matter of law that it did not breach the entry age contracts of plaintiff and other members of the certified class. We look to the law on interpretation of insurance contracts.[3] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' " (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

 In order to ascertain whether there is an ambiguity in an insurance policy, "the disputed policy language must be examined *in context* with regard to its intended function in the policy. [Citations.] This requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises and 'common sense.' [Citation.]" (*St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.* (2002) 101 Cal.App.4th 1038, 1058 [124 Cal.Rptr.2d 823].) "An insurance policy is considered ambiguous when its terms are capable of two or more constructions, both of which are reasonable." (*Prudential Ins. Co. of America, Inc. v. Superior Court* (2002) 98 Cal.App.4th 585, 599 [119 Cal.Rptr.2d 823].)

 The contracts at issue in this case each contained a provision entitled "Term of Your Agreement" (pt. IV in plaintiff's contract No. 1002), which stated: "D. We have the right to cancel (end your coverage) or modify this Agreement, including change subscription charges, if we give you 30 days' written notice." Considered in isolation, this provision seems to authorize Blue Cross to change any term of the policy upon proper notice. But the scope of Blue Cross's authority is not clear when the provision is read, as it must be, in the context of the entire policy.

---

[3] A health care service plan is not necessarily equivalent to an insurance policy for all purposes (see *Williams v. California Physicians' Service* (1999) 72 Cal.App.4th 722, 729 [85 Cal.Rptr.2d 497]), but for the purposes of the contract interpretation involved in this case, the distinctions are immaterial. (See *Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1, 3, fn. 1 [233 Cal.Rptr. 76, 729 P.2d 267].)

The contracts required Blue Cross to calculate subscribers' premiums on an entry age basis.[4] This requirement is found in part XV of plaintiff's contract (No. 1002), which contains a chart showing subscription charges. The left hand column of the chart lists the "Initial Enrollment Age" and the columns to the right show the subscription charges for the number of individuals to be insured: single, two party, family, adult and child, or adult and children. The contract provides: "The Initial Enrollment Age pertains to enrollment under this Agreement only. [¶] For married Subscribers enrolled under a 2-party or Family coverage, the Age Rating Category will be based upon either the age of the Subscriber or the age of the enrolled spouse, whichever is younger. If Contract Type changes, Subscription Charges will be rated as an Initial Enrollment."

The next paragraph provides: "Blue Cross reserves the right to change the Subscription Charges on thirty days' written notice to the Subscriber prior to the close of any quarterly term. The change will become effective on the date shown in the notice, and payment of the new charges will indicate acceptance of the change."

This portion of the policy, which specifically addresses the entry age rating and the subscription charges, can reasonably be understood to promise a subscriber that unless the contract type changes, for example from single to two party, he or she will continue to be rated at the initial enrollment age. It also can reasonably be understood to reserve to Blue Cross the right to change the subscription charges, but not the entry age rating. These reasonable interpretations, which limit Blue Cross's right to modify the agreement, are in conflict with the apparently broad grant of authority to cancel or modify the agreement set out in part IV, paragraph D of the contract.

In the interpretation of insurance contracts, "a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." (*General Ins. Co. v. Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 426 [51 Cal.Rptr. 462]; *Furtado v. Metropolitan Life Ins. Co.* (1976) 60 Cal.App.3d 17, 25 [131 Cal.Rptr. 250]; see also Civ. Code, § 3534 ["Particular expressions qualify those which are general."].) Application of this principle leads to the conclusion that Blue Cross's general authority to modify the contracts did not include the authority to change the specific contract term promising that entry age rating would continue unless the subscriber changed contract type.

[4]This is set out as an undisputed fact in Blue Cross's separate statement, and is admitted by plaintiff.

This conclusion is reinforced through the normative rules for resolving contract ambiguities. Plaintiff reads the language of the contract as providing that her entry age rating would not be modified except upon a change in contract type; Blue Cross reads it as authorizing it to modify any term of the contract upon 30 days' notice. ■ If the language of an insurance policy is ambiguous or uncertain, the policy must be interpreted to give effect to the insured's objectively reasonable expectations. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1265; *Home Savings of America v. Continental Ins. Co.* (2001) 87 Cal.App.4th 835, 841 [104 Cal.Rptr.2d 790].)

Plaintiff submitted parol evidence to establish the objectively reasonable expectations of the insureds. Parol evidence may properly be considered as "other evidence of the circumstances under which the agreement was made or to which it relates, . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, . . ." (Code Civ. Proc., § 1856, subd. (g); *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100].)

■ Blue Cross argues plaintiff conceded in discovery that there was no ambiguity in the policy, and therefore she is precluded from submitting parol evidence to interpret the policy. In form interrogatory 50.6, plaintiff was asked: "Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous." Plaintiff responded: "No. Plaintiff asserts that the contracts are clear in giving insureds enrollment age protection and that said protection could only be changed in the event of a voluntary change by the insured." A fair reading of the response is that plaintiff believes the contract unambiguously protects the entry age rating from modification unless the insured changes coverage. Plaintiff's assertion that the policy unambiguously favors *her* position does not concede an argument that if there is some ambiguity, it should be resolved against her. We find no judicial waiver on this point.

■ As we have discussed, the contract does not unambiguously support the position of Blue Cross. Assuming that it does not unambiguously favor plaintiff's position either, the only inference is that it is ambiguous. We proceed on the assumption that it is, and that plaintiff was entitled to submit parol evidence to aid her position.

In support of her interpretation of the contract, plaintiff submitted the deposition testimony of James Killian, director of sales at the Woodland Hills office of Blue Cross, beginning in 1983.[5] He explained that in enrollment age products marketed at that time, a person's age at the time of

---

[5]Plaintiff became a Blue Cross subscriber in 1984.

enrollment is what was used "as long as you remained in that product and didn't have a major change in status or change deductible . . . ." Mr. Killian was shown Blue Cross advertising brochures for 1982 and 1983 (labeled exhibits 5, 7 and 8 for identification) which described the health care plans offered by Blue Cross at that time. In the section explaining the cost of the available plans, the brochures each define "Initial Enrollment Age" as "the age of the Subscriber or enrolled spouse whichever is younger as of the date the application is signed." After setting out the subscription charges, the brochures state that "Subscription charges are subject to change." They explain: "Your AGE RATING category will not be re-evaluated unless: [¶] Your contract type changes. (For example, if you change from a Single party Contract to a Two-Party or Family Contract.) [¶] You change your Plans. (For example, if you change from Plan '500' to a Plan '1000'.)" Mr. Killian testified that these explanations were consistent with other materials he had seen describing the enrollment age provision, and were consistent with the way he understood the enrollment age rating feature worked.

Plaintiff also relied on the deposition of Jacqueline Anderson, designated by Blue Cross to testify about "The nature and extent of any agreement made by Blue Cross in Plan Number 1002 and other entry age-rated plans to rate subscribers based upon their age at initial enrollment." According to Ms. Anderson, under plaintiff's Blue Cross policy and the other entry age policies at issue, the agreement was that Blue Cross would rate subscribers based on their age at the time of enrollment, and as their age changed, they still would be rated based upon the age they had at the time they enrolled, so long as there was no change in contract type.

This explanation of the age rating provision in Blue Cross's entry age contracts is entirely consistent with the interpretation advanced by plaintiff: the subscriber's premiums would continue to be age rated based on the subscriber's age at the time of initial enrollment, unless the subscriber changed contract type or plans. This entry age rating provision would be activated at the time of initial enrollment, but could only be enjoyed in the future, as the subscriber grew older and would, in the absence of this promise, pass through older age rating bands. It was objectively reasonable for the parties to understand that Blue Cross's contractual right to modify the terms of the contract was limited with regard to this provision, and that it could only modify the entry age rating upon the occurrence of the two designated events, a change of contract or a change of plan. Blue Cross's interpretation of the contract, that it could modify the age rating term on 30 days' notice, would make this promise meaningless. ■ A contract may not be interpreted in a manner which would render one of its terms mean-ingless. (*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1483 [77 Cal.Rptr.2d 479].)

█ For all these reasons, the entry age contracts are subject to the interpretation that Blue Cross's authority to modify terms on 30 days' notice does not extend to the entry age rating provision. Blue Cross failed to establish as a matter of law that its transfer of the contracts was within the modification provision of the contracts, and hence failed to establish a complete defense to the cause of action for breach of contract.

## II

█ In opposition to Blue Cross's second summary judgment motion, plaintiff asserted Blue Cross had not complied with the statutory[6] and contractual requirements for modification of the contracts. The court gave Blue Cross an opportunity to amend its motion to address this claim. Blue Cross relied on plaintiff's discovery responses to argue that she had conceded that her action was not based on a lack of statutory or regulatory compliance. In granting summary judgment, the trial court concluded plaintiff had "admitted the statutory noncompliance issue away." We disagree.

Plaintiff did not allege in her complaint that Blue Cross failed to comply with the requirements of the Knox-Keene Act. In its answer, Blue Cross asserted plaintiff's claims were barred by section 1367.15,[7] a provision in that act "which the DOC construed as requiring Blue Cross to make coverage available to Plaintiff and the class through certain actively marketed contracts which were not entry-age rated but rather attained-age rated. Thus, due to that change in the law as construed by the DOC, it was not possible or practical for Blue Cross to continue to entry-age rate the premiums of Plaintiff and the class."

In response to Blue Cross's discovery, plaintiff admitted that her complaint "does not allege any noncompliance *as a basis for liability*." (Italics added.) A fair reading of this admission is that plaintiff did not seek relief

[6]Plaintiff was relying on section 1352.1, part of the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act) (§ 1340 et seq.).

[7]Section 1367.15 provides: "(c) No block of business shall be closed by a health care service plan unless (1) the plan permits an enrollee to receive health care services from any block of business that is not closed and which provides comparable benefits, services, and terms, with no additional underwriting requirement, or (2) the plan pools the experience of the closed block of business with all appropriate blocks of business that are not closed for the purpose of determining the premium rate of any plan contract within the closed block, with no rate penalty or surcharge beyond that which reflects the experience of the combined pool." Subdivision (h) provides: "A health care service plan shall bring any blocks of business closed prior to the effective date of this section into compliance with the terms of this section no later than December 31, 1994." The entry age blocks of business were closed before this statute was enacted, and Blue Cross was therefore required to bring them into compliance in accordance with subdivision (h).

based on statutory or regulatory noncompliance. This is consistent with her pleadings, which asserted liability based on breach of contract. It is not, however, an admission that Blue Cross complied with all applicable statutes and regulations. Plaintiff has not forfeited her right to challenge Blue Cross's *defense* that it acted in accordance with statutory obligations when it transferred subscribers from entry age to attained age contracts.

We do not at this stage reach the merits of Blue Cross's defense that its transfer of the contracts was in compliance with section 1367.15. In its grant of summary judgment, the trial court expressly avoided consideration of that issue, deeming it forfeited. Plaintiff may raise it on remand.

### III

Blue Cross argues that plaintiff's causes of action for breach of the implied covenant of good faith and fair dealing and for declaratory relief fail with her contract cause of action. In light of our conclusion that Blue Cross has not established a complete defense to the contract cause of action, these causes of action remain viable.

### IV

Plaintiff, as class representative, claims the trial court abused its discretion in denying class certification for the causes of action for fraud, negligent misrepresentation, and unfair competition. Code of Civil Procedure section 382 authorizes a class suit "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, . . ." ■ To obtain class certification, a party must establish an ascertainable class and a well-defined community of interest among the class members. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) To establish a community of interest, there must be common questions of law or fact, and the class representative must have claims or defenses typical of the class and be able to adequately represent the class. (*Ibid.*)

■ "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) A trial court's ruling on class certification, if supported by substantial evidence, will generally not be disturbed unless the court used improper criteria, or made incorrect legal assumptions. (*Ibid.*) Any valid, pertinent reason stated by the court will be sufficient to uphold an order denying class certification. (*Id.* at p. 436.)

In her cause of action for fraud, plaintiff alleged that "it was represented to plaintiff at the time of sale, and at the time of each premium renewal under the policy, that Blue Cross agreed to rate plaintiff's premiums based upon her age at the time the policy was issued and not on her attained age. It was represented that this would provide plaintiff with the security of knowing that in later years her premiums would remain at a reasonable level and would not increase based upon her advancing age."

Plaintiff also alleged that Blue Cross failed to disclose or concealed from plaintiff the following material facts: "(a) Blue Cross knew it had no reasonable basis for representing that premiums would always be so computed. Blue Cross knew it was unlikely that the projections leading to its conclusion that future premiums would be based upon age at the time of enrollment were inherently unreasonable and unreliable and that it made such predictions for the sole purpose of boosting sales and inducing consumers to chose [sic] its policies over those of other insurers; [¶] (b) Blue Cross knew it would subsequently institute new premium charges when it would try to make up for the bogus guarantees and projections; [¶] (c) Blue Cross did not intend to perform this promise because, according to Blue Cross, it retained the right to change the enrollment age rating to attained age rating at any time it desired; [¶] (d) Blue Cross was embarking on a plan to systematically do away with enrollment age contracts in favor of more lucrative attained age contracts and that consumers such as plaintiff would never receive the benefit of the age protection as had been represented by, and agreed upon, by Blue Cross[.]"

Plaintiff alleged these representations and concealments were made with the intent to deceive and to induce plaintiff to purchase and continue to renew the policy; that plaintiff relied upon the representations and omissions; and that as a proximate result, she suffered loss of premiums. Plaintiff's cause of action for negligent misrepresentation was premised on the same allegations, with the additional claim that the representations and omissions were carelessly and negligently made.

In denying class certification, the trial court focused on the fact that the pleadings and plaintiff's deposition testimony indicated she relied on the oral representations of Blue Cross's agents. The court concluded this would require proof on a subscriber by subscriber basis, rather than a common set of facts for the entire class, and hence that it was not appropriate for class treatment. This is sufficient support for the denial of certification.

*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082 [23 Cal.Rptr.2d 101, 858 P.2d 568] does not aid plaintiff. In that case, the court rejected the plaintiffs'

argument that an inference of reliance arises as to an entire class, explaining that only "when the same material misrepresentations have actually been communicated to each member of a class" would the inference of reliance arise as to the entire class. (*Id.* at p. 1095, italics omitted.) Plaintiff's complaint contains no such allegations.

The court also denied class certification as to the cause of action for unfair competition in violation of Business and Professions Code section 17200 et seq. (commonly known as the unfair competition law or UCL).[8] An action under the UCL may be brought "by any person acting for the interests of itself . . . or the general public." (Bus. & Prof. Code, § 17204.) It is therefore in the nature of a representative action itself.

Relying on *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718], plaintiff argues that a class action is a superior remedy to an individual action under the UCL because fluid recovery is available in a class action, but not in an action under the UCL. A fluid recovery remedy is necessary only when a defendant must disgorge money that is not to be returned to the persons from whom it was obtained. (*Kraus, supra,* 23 Cal.4th at p. 127.) Plaintiff has at all times maintained that all entry age subscribers who were transferred to attained age plans can be identified. This obviates the need for a fluid recovery. Plaintiff has not shown what would have been gained by taking this cause of action, already brought on behalf of herself and the general public, and certifying it as a class action. There was no abuse of discretion in denying class certification to this cause of action.

### DISPOSITION

The order denying class certification as to the causes of action for fraud, negligent misrepresentation, and unfair competition is affirmed; the judgment in favor of Blue Cross is reversed. Plaintiff is to have her costs on appeal.

Hastings, J., and Curry, J., concurred.

A petition for a rehearing was denied June 3, 2003, and respondent's petition for review by the Supreme Court was denied July 30, 2003. George, C. J., and Brown, J., did not participate therein.

---

[8]See *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1132, footnote 1 [111 Cal.Rptr.2d 296].