# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3609

_____

|  |  |  |
|---|---|---|
| Gerald Hughes; Patrick Hughes, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| William Wheeler, Sr. | * | of Nebraska. |
| | * | |
| Appellee. | * | |

_____

Submitted: February 12, 2004

Filed: April 15, 2004

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY, Circuit
Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case comes to us on appeal from a summary judgment entered in a case involving the right to recover the proceeds of a life insurance policy. We affirm the district court[1] in all respects.

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

## I.

We review a grant of summary judgment *de novo*, considering the facts in the light most favorable to the non-moving party. *See Chambers v. Metropolitan Prop. & Cas. Ins. Co.*, 351 F.3d 848, 852 (8th Cir. 2003). Using that standard, the facts of this case can be simply stated: William Wheeler, Jr., and Maureen Hughes were husband and wife, and after William killed his wife in California, where they had resided, he fled to Nebraska where he committed suicide. State Farm Insurance Company instituted a diversity action and impleaded the parties to this appeal to determine who was entitled to the proceeds of William's life insurance policy. William's policy named his wife as the primary beneficiary and named his father, William Wheeler, Sr. (Mr. Wheeler), a Nebraska resident, as the contingent beneficiary.

In the district court, brothers Gerald and Patrick Hughes claimed that they were entitled to the proceeds of William's policy on three grounds: First, they maintained that the policy was community property under California law and therefore at least half of the proceeds passed to them as the heirs of Ms. Hughes, who was their sister. Second, they argued that allowing Mr. Wheeler to receive the policy proceeds would constitute unjust enrichment. Finally, they asserted that the California "slayer statute" should be equitably extended to prevent Mr. Wheeler from profiting from the murder that his son committed. They also objected to venue in the Nebraska district court, asking that the case be transferred to California. The district court ruled against the Hughes brothers on all issues, and this appeal followed.

## II.

Even if, as the Hughes brothers contend, the insurance policy is community property, they would not be entitled to any portion of the proceeds as the heirs of Ms. Hughes. In essence, the Hughes brothers are claiming that the proceeds of William's insurance policy should be divided between Mr. Wheeler and the estate of Ms. Hughes because those proceeds are community property since Mr. Wheeler's

designation as a contingent beneficiary was an improper gift of community property. In order to evaluate this argument, it is first necessary to provide some background on the treatment of gifts and insurance policies under California law.

In California, a spouse may make a gift of community personal property only with the written consent of the other spouse. *See* Cal. Fam. Code § 1100(b). A gift of community property made without such consent is completely voidable so long as the community exists. *See Harris v. Harris*, 57 Cal. 2d 367, 369 P.2d 481, 482 (1962); *cf. Droeger v. Friedman, Sloan & Ross*, 54 Cal. 3d 26, 30, 812 P.2d 931, 932 (1991). If the spouse who made the gift dies, the non-consenting spouse can void only one-half of the transaction, because one-half of the unauthorized *inter vivos* gift is treated as a substitute for a testamentary devise. *See Harris*, 57 Cal. 2d at 369-70, 369 P.2d at 482. The estate of a spouse may bring an action to void any gifts made by the other spouse without proper consent. *Id.* at 370, 369 P.2d at 482.

California treats the proceeds of a life insurance policy purchased with community property as community property. *See Patillo v. Norris*, 65 Cal. App. 3d 209, 215, 135 Cal. Rptr. 210, 215 (1976). This has been held to mean that a married person in California cannot defeat the interest of his or her spouse in the proceeds of a life insurance policy purchased with community property, unless his or her spouse consents in writing. *See Estate of Hart v. Ray*, 135 Cal. App. 3d 684, 693, 185 Cal. Rptr. 544, 549 (1982); *see also Life Ins. Co. of N. Am. v. Cassidy*, 35 Cal. 3d 599, 605-06, 676 P.2d 1050, 1053 (1984).

The Hughes brothers argue that to the extent that the insurance policy on William's life was paid for with income earned in California, the policy and its proceeds are community property. They go on to maintain that there was no valid "written consent" by Ms. Hughes to the designation of Mr. Wheeler as the contingent beneficiary. They therefore claim one-half of the value of the policy's death benefit on behalf of the estate.

We have little difficulty in agreeing with Mr. Wheeler that there was "written consent" to his designation as a beneficiary. When the insurance policy at issue here was purchased, it named Ms. Hughes as the primary beneficiary and Mr. Wheeler as the contingent beneficiary. The couple subsequently purchased a life insurance policy on Ms. Hughes naming a trust as the primary beneficiary, and the primary beneficiary on William's policy was changed to the same trust. One year later, the couple simultaneously designated new beneficiaries for both policies: William's policy (the one at issue here) designated Ms. Hughes as the primary beneficiary, Mr. Wheeler as the contingent beneficiary, and William's sister as the final beneficiary; Ms, Hughes's policy designated William as the primary beneficiary and the Hughes brothers as contingent beneficiaries. The Hughes brothers admit that Ms. Hughes filled in the final change-of-beneficiary forms for both policies, although the signature on William's policy appears to be his and is certainly not Ms. Hughes's. In addition, the parties agree that during the course of the marriage, Ms. Hughes paid the premiums on both policies and was knowledgeable about insurance matters.

California law does not require an explicit writing for a spouse to give "written consent" to another spouse's gift of community property. Rather, the principle seems to be that where a spouse executes any writing from which consent can be inferred, the requirement of "written consent" is satisfied. For example, in *Spreckels v. Spreckels*, 172 Cal. 775, 786-88, 158 P. 537, 541-42 (1916), a husband unilaterally made a gift of a substantial portion of the community assets to two of his children. His wife subsequently executed a will explicitly disinheriting the two children on account of the gift. *See id.* The court ruled that the wife's will was sufficient written evidence of consent to her husband's gift of community property. *See id.*, 172 Cal. at 787-88, 158 P. at 541-42. In *Metzger v. Vestal*, 2 Cal. 2d 517, 522-23, 42 P.2d 67, 69-70 (1935), the court held that a wife gave "written consent" to a transfer of community property that occurred as part of the incorporation of a family business. The various parties to the transaction had orally agreed to the distribution of property, and the wife signed various documents involved in the transaction. *See id.* Even

-4-

though none of the documents gave explicit consent, the court deemed them sufficient to satisfy the requirement of "written consent." *See id.* In light of these cases, we think it clear that the writings here are sufficient to satisfy the statutory requirement.

The Hughes brothers refer us to *Estate of Hart*, but that case is clearly distinguishable. It is true that *Estate of Hart*, 135 Cal. App. 3d at 693, 185 Cal. Rptr. at 549, involved a murder-suicide in which the designation of the contingent beneficiary on the slayer's life insurance policy was successfully challenged, but in that case there was no evidence whatever that the other spouse had consented to the designation of the contingent beneficiary.

The other arguments made by the Hughes brothers regarding William's designation of Mr. Wheeler as a contingent beneficiary lack merit, and we reject them without further comment.

## III.

The Hughes brothers also argue that by killing his wife, William violated the fiduciary duty that he owed her under Cal. Fam. Code §§ 1100(e), 721, and 1101(a). Other than the statutes themselves, the Hughes brothers do not cite to any authorities supporting their interpretation of the duty, and our research has turned up no relevant cases. On their face, however, the statutes speak of a fiduciary duty "in the management and control of community assets and liabilities," Cal. Fam. Code § 1100(e), and forbid a spouse from taking "unfair advantage of the other," Cal. Fam. Code § 721(b), which suggests that the duty is limited to the management of property. In other words, the statutes provide for an action in the nature of waste for mismanagement of community assets.

Even granting that the statutes here have some relevance to cases of homicide, the provisions cannot produce the result that the Hughes brothers urge us to reach. As a result of the killing here, William certainly kept Ms. Hughes from benefitting

from the insurance policy. But even if he had not killed her, we do not know that she ever would have benefitted from the policy, unless we assume that he would have necessarily predeceased her, which is something that we cannot do. The Hughes brothers do not seem to be arguing that William violated his fiduciary duty by not killing himself before, say, arranging to have his wife killed after his death, and we do not in any case think that the California statutes at issue here will bear so fantastic a construction. More fundamentally, perhaps, the California statutes provide for an action for damages for a breach of fiduciary duty, not for a right to some specific property in case of a breach, and the Hughes brothers cite to no tracing principles or equitable lien remedies available under California law to reach the particular asset at issue in this case.

IV.

The Hughes brothers next argue that Mr. Wheeler would be unjustly enriched if he receives the policy proceeds. We find this argument unpersuasive. An insurance policy is fundamentally a contract. *See Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 780, 134 Cal. Rptr. 2d 152, 156 (2003). Although a host of special rules may apply to insurance policies, the basic principles governing them are common to all contracts. *See id.* The parties to a contract decide who will benefit and who will not, simply as a matter of private ordering. In contrast, unjust enrichment involves a broader concept: Rather than looking solely to the intentions of the parties, it applies objective standards of fairness to insure that people do not profit from their own wrongs. But in this case, there is no allegation that Mr. Wheeler has done anything wrong: He is simply the beneficiary of a valid contract.

While there are no California cases on the precise point, other courts have addressed the issue of whether a contingent beneficiary of a slayer's insurance policy is improperly enriched in circumstances like the present ones, and they have uniformly ruled that the contingent beneficiary is entitled to payment as specified in the contract. *See In re Estates of Covert*, 97 N.Y.2d 68, 76-77, 761 N.E.2d 571, 576-

77 (2001); *Metropolitan Life Ins. Co. v. Hawkins*, 970 F. Supp. 550, 555-56 (E.D. La. 1997). We are persuaded that these cases are correctly decided for the reasons already given.

## V.

The Hughes brothers maintain that the public policy behind the California "slayer statute" should be extended to preclude payment to Mr. Wheeler. This argument is without substance. The statute provides that a "named beneficiary of a ... life insurance policy ... who feloniously and intentionally kills the ... person upon whose life the policy is issued is not entitled to any benefit under the ... policy ... and it becomes payable as though the killer had predeceased the decedent." Cal. Prob. Code § 252. By its terms this section applies only to a policy on the life of the victim. There is absolutely nothing in the language suggesting that it should be applied to a policy on the life of the slayer or against someone who is neither the slayer nor his or her abettor. We decline to extent the statute beyond its own terms.

## VI.

Finally, the Hughes brothers claim that the district court erred in not granting their motion for a change of venue to California. We review the district court's denial of the motion for an abuse of discretion. *See Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1208 (8th Cir. 1995). There is no doubt some inconvenience in litigating a case far from home, but the mere fact that the case is heard in a foreign state cannot be an adequate reason for a change of venue in a diversity action, since by hypothesis in such an action one of the parties will almost always have to litigate in a foreign state. A review of the affidavits supporting the Hughes brothers' motion reveals little more than a collection of conclusory statements and vague concerns about the ability of the federal district court in Nebraska properly to decide issues of California law. Accordingly, we cannot say that the district court abused its discretion in denying this motion.

## VII.

For the reasons stated above, we affirm the decision of the district court.

_____